THOMAS G. BRYAN, plaintiff in error, *vs.* THE STATE, defendant in error.

1. An indictment is sufficiently technical, under section 4428, of the Code, that charges, that the defendant, in the year 1870, did unlawfully employ the servant of one Phillip West, during the term for which he was employed, and that he was then in the employment of West, and that his term of service was not expired.

2. Where the Court let in testimony of a previous employment by the defendant, though before the end of the year, and not in writing, it was error in the Court to charge the jury that such previous contract was no protection or justification, inasmuch as that question was one for the jury, under the facts.

3. Where the evidence showed the person employed by the defendant had been previously employed by the prosecutor, to bring other hands with him to his plantation and superintend them :

*Held,* That such·employment did not constitute such person a servant, within the provisions of the law. See concurring opinions.

Criminal Law.   Servants.   Before Judge CLARK.   Lee Superior Court.   February, 1871.

The indictment charged Bryan with a misdemeanor, " for that the said Thomas Bryan, in the county and State aforesaid, on the third day of January, in the year eighteen hundred and seventy, did then and there unlawfully employ Mitchell Daniel, colored, the servant of one Philip West, during the term for which he was employed, the said Thomas Bryan knowing, then and there, that the said servant, Mitchell Daniel, colored, was then in the employment of said Philip West, and that his term of service had not expired, contrary," etc. When the jury was empaneled and sworn, the defendant's counsel demurred to said indictment, because the offense was not sufficiently stated to authorize conviction.   The demurrer was overruled.   West then testified, that on the 1st of January, 1870, he made a contract with said negro, by which he hired the negro for 1870; the negro was to furnish hands and "boss" or superintend them, and was to move on his place and commence work on Monday, the 3d of January,

1870.   But the negro did not come, though West sent for him to one Harris', where he had worked during 1869.

Harris testified, that on the 3d of January, 1870, he saw Bryan and the negro together, and told Bryan that West had hired the negro for 1870.   Bryan said he could not help that, and he or the negro said, that the negro had promised Bryan in "ground-pea-time," in 1869, to live with him during 1870, if Bryan got a place.   The negro remained with Bryan during 1870.   Another witness heard Bryan say to the negro, on 2d of January, 1870, that his, Bryan's, offer was better than West's.   For the defendant, the negro testified that, in 1869, in June, his mule died, and he called on Bryan, his former master, for help, got it, and agreed to live with him during 1870, if he got a place, Bryan agreeing to pay him.   This contract was fixed on definite terms, on the 2d of January 1870.   He had contracted with West on the day before, to get squad of hands, oversee, etc., for $150 00 cash, and one-third and one-fourth of crops.   He did not carry out West's contract, because hands could not be had, having generally hired themselves out.   And he did not know Bryan had a place till the 2d of January, 1870.   Bryan told Harris, in said conversation of 3d of January, 1870, that rather than have any bad feeling, he would give him up, though he had hired him, long before, for 1870.

Defendant's counsel requested the Court to charge the jury, that "if this negro, in June, 1869, agreed to live with and work for defendant, for 1870, and the subsequent agreement under which the negro entered upon and served defendant for 1870, was made in good faith and in consequence of the first agreement, with no intention to interfere with West's contract, or to violate the law, defendant was not guilty."   He refused so to charge, but charged the jury that, "when and as soon as one employed another to serve him, for a time, to commence at a day, then such person employed, was, in contemplation of law, the servant of the person so contracting for his services, although the employee had not,

in fact, entered into the actual service of or labor for the person so employing him; and if defendant employed Daniel after West had so contracted for his services, for the year 1870, and during that year, and before he had gone into the actual service of and labor for West, under that contract, defendant was guilty, if he contracted with knowledge of West's contract." The defendant was found guilty. A new trial was moved for, upon the grounds that the verdict was contrary to law and evidence, and that the Court erred in refusing to sustain said demurrer, and to charge as requested, and in charging as aforesaid. The new trial was refused, and that is assigned as error.

LYON, DeGRAFFENRIED & IRVIN; W. A. HAWKINS, for plaintiff in error.

B. P. HOLLIS, Solicitor General, for the State.

LOCHRANE, Chief Justice.

1. This was an indictment under section 4428 of the Code. The first ground of error is to the judgment of the Court in overruling the demurrer to the indictment. The indictment charges that Thomas Bryan, in the year 1870, did unlawfully employ the servant of one Philip West during the term for which he was employed; that the servant was then in the employment of West, and that his term of service was not expired. In the opinion we entertain of this question we are satisfied that the offense is sufficiently averred. It is charged in the language of the Code. And, while the pleader might have made it more distinct by stating what the term was for which the employment was made rather than use the words "during the term," still we think that the allegation of the date of such employment, together with the further allegation that he was then in the employment of the party, and that his term of service had not expired, was a sufficient compliance with section 4535 of the

Bryan *vs.* The State.

Code. This construction of that statute is essential to the administration of justice, as long as the statute itself remains the law of this State. For when the law declares every indictment shall be deemed sufficiently technical and correct which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may be easily understood by the jury, to exact, by construction, a different rule of pleading would in effect be a virtual repealment of the provision. We, therefore, think the Court was right in overruling the demurrer to the indictment.

2. Upon the testimony submitted in this case the prisoner was convicted, and a motion was made for a new trial upon several grounds, which we will notice in their order. The ground of the second error is in the charge of the Court that, as soon as one had employed another to serve him for a term to commence at a day thereafter, the person employed was, in contemplation of law, the servant of the person contracting for his services, although he had not, in fact, entered on the actual service of the employer. At common law, we find the definition of servants to embrace, first, menial servants; second, apprentices; third, laborers; and fourth, stewards, factors and bailiffs. As to how far the relative rights and duties of these relations at common law are applicable to our condition, or are of force in this State, we will not now discuss. To say the least, the most of the correlative duties springing out of these relationships have gone into disuse, and ceased to be applicable practically to our condition. It is not the theory, nor is it consistent with the spirit of our institutions, to recognize factors, stewards or bailiffs in the light of servants as at common law. The terms and the intendments of the service required, under our institutions, are incompatible. Nor do we believe that a citizen of this State, under the franchises and immunities with which the law invests him, who may contract for labor either as a mechanic or on a plantation, is so stripped of his individuality and

personal independence as to constitute him a servant in the
sense of the common law. Nor do we, in this opinion, de-
sign to dignify such persons beyond the proper reach and
regulations of the law. We have no sympathy with the cant
that elevates, by adulation and flattery, this class of people in
this State beyond their legitimate station. The prosperity
of the State depends upon a well organized system of labor;
and the Legislature may provide by appropriate penalties for
the breach of contracts, and force by its processes strict com-
pliance therewith. They may go farther in the enforcement
of Acts for the punishment of idleness, and compel obedience
to their legislative mandates. The law which gives a right
of action under the laws of force in this State against the
master for the act of his servant, confines such right of action
to acts done while he is actually employed in the master's
service. And this principle would not apply to cases where
the servant was only under contract, for in such case no right
of action would accrue for acts done before he went into his
service. The law under consideration makes that which was
a cause of action for damages at common law a crime under
the provisions of our Code. The right of an action for dam-
ages against a person hiring the servant of another while in
his service, by which the servant leaves the one and goes to
the other, is "founded," says Blackstone, "in the property
that every man has in the service of his domestics acquired
by the contract of hiring and purchased by giving him
wages." While, at common law, the master is not liable for
the act of his servant, except in his actual employment, nor
even then except the act of the servant grows out of such
employment, still his right in the premises grows out of the
contract of hiring, and the common law presumes him in the
service; for the language is, "If any person do hire or re-
tain my servant being in my service, for which the servant
departed from me and goeth to serve the other;" thus rec-
ognizing a right acquired by the contract, in the loss of the
service. And the Legislature of 1866, looking to the de-

rangement of an entire system of labor, and warranted by the facts growing out of the circumstances in which the colored element was wholly irresponsible for any breach of contract, and consequently regardless of it, and the failure of all law to enforce such contracts, or provide any remedy or redress for such wrongs, and appreciating the great public necessity of punishing employers whose acts contributed to the violation of such contracts, enacted this salutary law, which we hold, first, it was within their constitutional power to do; and we therefore think the view of the law presented by the Court was proper. The evidence in this case showed that Mitchell Daniel was originally the slave of the plaintiff in error; that he was working with Nathaniel Harris in 1869, and during that year lost his mule, when he came to Bryan, who furnished him with one, and at that time agreed to live with him during the year 1870. The evidence is further that West, the prosecutor, employed him on the 1st day of January, 1870. He was "to furnish other hands," and "superintend as boss or superintendent." Then, on the 3d day of January, he came to Bryan, who held him during the year. On this statement of facts, the Court charged the jury that this contract was no justification, and could not justify or protect him from a conviction. In this, we think, the Court committed error. The questions of fact in this case were for the consideration of the jury; and whether this agreement to live with Bryan for the year 1870, under the facts, was such a contract as the Court could or could not enforce, because it was not in writing was not the question in the criminal prosecution in this case. It was competent to go to the jury to illustrate the intent and motive of the parties, and might, by its subsequent ratification, on the 3d of January, 1870, have constituted a valid contract; and the matter ought to have been left to the consideration of the jury to give it such weight as they, in their judgment, might deem it entitled to.

3. Again we hold, from the testimony in this case, that

Bryan *vs*. The State.

Mitchell Daniel was not employed as a servant, but as a superintendent of servants, if laborers may be so classed; and his employment under the facts in this case, by Bryan, would not render him obnoxious to the provisions of the Code. The law only specifies "the servant of another," and we can not enlarge the Act by construction. If he was not the servant of West, then though in his employment by contract, the law did not authorize a conviction for crime on the part of Bryan, for the breach of contract upon the part of the negro, Daniel. The terms of the law must be construed with regard to the intent of the law, and the intent was to punish, not for breaches of contract, but the employment of the servants of another, during the term of such service. And while we may hold that the term of service begins with the contract for service, before it is actually entered on, as the language of the Act is directed against *the employment* of the servant of another; still, we do not think the construction of the law will include any except servants. And we, therefore, think the Court erred in holding one who was employed to superintend others, where there is no proof he was to work himself, as a servant, within the meaning of the Code.

Judgment reversed.

McCay, Judge, concurring.

A contract that one should furnish a lot of hands to work a crop, he and they to receive one-third of the corn and one-fourth of the cotton, the contractor to superintend and oversee the hands, and to get $150 00 extra, is not a contract *of service*, under section 4428 of the Revised Code.

Warner, Judge, concurring.

The demurrer to the indictment was properly overruled. The offense was stated in the terms and language of the Code, and so plainly, that the nature of the offense charged might have been easily understood by the jury. The 4428th

section of the Code declares, that "If any person, by himself or agent, shall be guilty of *employing* the servant of another, during the term for which he, she or they may be employed, *knowing* that such servant was so employed, and that his term of service was not expired, or if any person or persons, shall entice, persuade or decoy, or *attempt* to entice, persuade or decoy, any servant to leave his employer, either by offering higher wages, or in any other way whatever, during the term of service, *knowing* that said servant was so employed, he shall be deemed guilty of a misdemeanor, and, on conviction thereof, be punished," etc.   This section of the Code contemplates two classes of offenses.   First, the *employing* the servant of another, during the term for which he, she or they may be employed, *knowing* that such servant was so employed, and that his term of service was not expired. Second, enticing, persuading, decoying, or *attempting* to entice, persuade or decoy, any servant to leave his employer, *knowing* said servant was so employed.   There are three classes of servants recognized by the common law:   First, menial servants; second, apprentices; third, laborers.   The general definition of servants, as mentioned in the Code, is sufficiently comprehensive to embrace all three classes of servants, as defined by the common law.   When one man has employed a servant to work for him for a definite period of time, and another man, *knowing* of such employment, employs that same servant for and during any period of the time for which the first employed him, he is guilty of the offense of *employing the servant of another*, within the true intent and meaning of the law.   The object and intention of the law, was to make it a punishable offense for one man to interfere with *the contracts* of another, or the employment of servants, having *knowledge* of such employment.   If A has employed a servant by contract, to work for him a specified period of time, and B, with *knowledge* of such contract of employment by A, afterwards employs that servant, for any period of the time embraced within A's contract of employment, the of-

fense is complete, under the law, whether the servant has actually entered into the service of his employer or not. The law was intended to prohibit any interference with *contracts* for the employment of servants, *knowing* that they were employed. If the servant has entered into the service of his employer, and another attempts *then* to employ him, or does employ him, such person is liable to be indicted for enticing, persuading or decoying such servant from the service of his employer, *knowing* such servant to be employed. Interfering with *contracts* for the employment of servants, *knowing* them to be employed, is one thing. Inducing servants to leave their employers after they have entered upon their term of service, *knowing* them to be employed, is another thing; and either is an indictable offense under the law. I concur in the judgment of reversal in this case, on the ground that the Court below erred in its charge to the jury, in relation to the contract made with the defendant and Mitchell Daniel, prior to the contract made with West. That contract should have been left to the consideration of the jury, for the purpose of showing a want of any *criminal intent* on the part of the defendant to violate the law. The charge of the Court excluded from the consideration of the jury, the criminal intent of the defendant. In view of that prior contract, they might or might not have considered it sufficient to rebut the presumption of any *criminal intention* on the part of the defendant, to violate the public law of the State, and they should have been left free to consider the evidence in relation to that point in the case.