## HUDGINS v. THE STATE.

1. An accusation under the Penal Code, § 122, which charges that the accused did, by offering higher wages, persuade and decoy, and did attempt to persuade, entice and decoy, by offering higher wages, the servant of a named person, "after he had actually entered the service of his employer, to leave his employer during the term of service," knowing that he was so employed, sufficiently sets forth a contract of employment between the servant and the master, as against a motion in arrest of judgment on the ground that the accusation failed to allege what the contract was, and whether it was verbal or written.

2. A contract of hiring for a year, to begin in presenti, is not within the operation of the statute of frauds.

3. The evidence authorized the verdict, and no sufficient reason appears for reversing the judgment.

Argued October 18,—Decided November 9, 1906.

Accusation of misdemeanor. Before Judge Hammond. City court of Griffin. September 24, 1906.

Hudgins was arraigned upon an accusation charging that he did, "by offering higher wages, persuade and decoy, and did then and there attempt to entice, persuade, and decoy, by offering higher wages, Frank Mathews, the servant of W. H. Baker, after he had actually entered the service of his employer, to leave his employer during the term of service, knowing that said Frank Mathews was so employed." The accused filed a plea of not guilty, and after a trial the jury rendered a verdict of guilty. A motion in arrest of judgment was filed, on the ground that the accusation did not set

forth any contract between the employer and the servant, and that it did not appear from the accusation whether the contract was oral or written. This motion was overruled. A motion for a new trial was also filed, which, in addition to the general grounds, contained a special assignment of error, on the ground that the court erred in admitting the following testimony of W. H. Baker: "Last October I hired Frank Mathews from him and his mother at two dollars per week for twelve months, or longer if he wanted to work longer. I was at Mr. Hudgins' the 18th or 20th of April of this year, and saw Frank Mathews at work in Hudgins' field. I then told Hudgins I had a contract with the boy." The objection to this testimony was that no contract was alleged in the accusation. Error is assigned on the overruling of the motion in arrest of judgment, and on the refusal of a new trial.

*Charles J. Lester* and *Thomas W. Thurman*, for plaintiff in error.

*Thomas E. Patterson, solicitor,* contra.

COBB, P. J. (After stating the foregoing facts.) During the existence of slavery it was neither necessary nor important that the negro should be instructed as to the binding obligation of a contract. When he emerged from this condition, and immediately, without any instruction on the subject, became clothed with full contractual powers, it is not surprising that he could be induced by unscrupulous white men to flagrantly violate the obligations of contracts into which he had entered. It may be that while the constitution of 1865 was in force, and prior to the adoption of the fourteenth amendment to the constitution of the United States, the General Assembly had power to declare that the violation of a contract by a negro should be a crime, without making such an act by a white man penal. The General Assembly however, seemed to have had no desire to make such a discrimination, nor was it deemed in furtherance of a wise public policy that every breach of a contract should be declared a crime. To prevent as far as possible the disastrous effects resulting from servants being enticed to violate their contracts of employment, in 1866 a statute was enacted which declared it a crime for a person to employ the servant of another during the term for which he was employed, knowing that the servant was so employed and that his term of service had not expired, and also making it a crime for any person to entice,

persuade, or decoy, or attempt to entice, persuade, or decoy any servant to leave his employment by offering higher wages, or in any other way, during the term of service, knowing that the servant was so employed. Code 1868, §4428; Acts 1866, p. 153. As the servant class in this State was made up largely of negroes, the effect of this statute was not to punish the negro who violated his contract, probably through ignorance that such an act involved any moral obliquity, but to punish the persons (generally white persons) who brought about the wrong resulting from the servant leaving his employer. That portion of the statute which ·made it a crime to employ the servant of another was, in 1873, amended by making it applicable to cases only where the servant was under a written contract attested by one or more witnesses (Acts 1873, p. 20). The act of 1866 as thus amended was embodied in the Code of 1873, as well as in the Code of 1882, appearing in each code as §4500. In 1883 the section of the code just referred to was further amended by adding the words "cropper or farm laborer," after the word "servant" wherever it appeared in the section, and, in that portion of the statute relating to enticing away the servant of another, adding the words, "whether under an oral or written contract." Acts 1882, p. 60. In the Penal Code of 1895 that portion of the statute above referred to which relates to the employment of the servant, cropper, or farm laborer of another, is embraced in §121. The remaining portion of the law is embraced in §122, in the following language: "If any person shall, by offering higher wages or in any other way, entice, persuade, or'decoy, or attempt to entice, persuade, or decoy any servant, cropper, or farm laborer, whether under a written or parol contract, after he shall have actually entered the service of his employer, to leave his employer during the term of service, knowing that said servant, cropper, or farm laborer was so employed, he shall be guilty of a misdemeanor." It is under this section that the accusation in the present case was preferred.

The ingredients of the offense defined in this section are: a contract by which one person is bound to render service to another as a servant, cropper, or farm laborer, which contract may be either in parol or in writing; the enticing away of a servant so bound, by offering higher wages or in any other way; knowledge on the part of the person who entices that the servant is so employed; and the

actual leaving by the servant of the employment before the term of service has expired. These ingredients must appear in an indictment or accusation charging one with the violation of this section. The accused went to trial without demurring to the accusation. The objection to its sufficiency is raised for the first time by a motion in arrest of judgment. It is now urged that the accusation does not with sufficient definiteness indicate that there was a contract of employment between the alleged servant and his alleged employer. The accusation will not be scrutinized with that degree of particularity which a special demurrer would have required. It is only to be determined at this stage of the case whether the words of the accusation allege in substance a contract. It alleges that Mathews was the servant of Baker, and that "he had actually entered the service of his employer." There can not be an employment without a contract. The relation of servant usually, if not always, arises as a result of a contract. As against a motion in arrest of judgment, a contract of service sufficiently appears. Even if the accused was entitled to be informed more definitely as to the terms and conditions of such contract, he should have attacked the accusation through the medium of a special demurrer. The only special ground in the motion for a new trial complained of the admission of the evidence referred to in the foregoing statement of facts, upon the ground that no contract of service was alleged in the accusation. What has been said disposes of this assignment of error. See, in this conection, *Bryan* v. *State,* 44 *Ga.* 328; *Hightower* v. *State,* 72 *Ga.* 482; *Broughton* v. *State,* 114 *Ga.* 34; *McAllister* v. *State,* 122 *Ga.* 744.

2, 3. The general grounds of the motion for a new trial remain to be disposed of. There was evidence from which the jury could find that a contract of service had been entered into between Baker and Mathews, who was a minor, such contract having been made both with the minor and his mother, who, so far as the record discloses, was entitled to his custody and authorized to make contracts for service to be performed by him. The evidence on some of the points in the case is circumstantial in its nature. The circumstances are such as to authorize a finding that the accused knew that Mathews was in the employ of Baker, that he offered him higher wages than he was receiving, and that, as a result of this

offer, he left the employment of Baker, where he was actually at work, and entered the service of the accused.

It is contended, though, that the contract of service appearing in the evidence was not to be performed within a year from the time it was made, and that neither Mathews nor his mother was bound thereby, by reason of the fact that it was within the operation of the statute of frauds; and that for this reason no crime was committed by the accused in enticing Mathews to leave the service of his employer, the effect of Mathews' conduct being simply to take advantage of a defense which he or his mother might have made at any time that the employer sought to enforce the contract against him or his mother. We will not undertake to determine in the present case whether the statute of frauds would be applicable as a defense to one charged with a violation of the statute under consideration. Under the view that we take of the case, the contract was not within the operation of the statute. The evidence of Baker on this subject is set forth in the statement of facts. A reasonable construction of this evidence is that the term of service was to begin at once and continue for one year, or longer if the servant so desired. There was a binding contract for one year's service, to begin at once. Whether this should continue any longer after the expiration of the twelve months was a matter to be determined by the employee or his mother. There was no effort to make a binding contract for longer than twelve months. Is such a contract within the operation of that provision of the code which enumerates among those promises which are required to be in writing, "any agreement (except contracts with overseers) that is not to be performed within one year from the making thereof"? Civil Code, §2693(5). A contract of hire for a year, to begin in presenti, is not within the operation of the statute of frauds. 1 Smith's Leading Cases (9th ed.) 600, and cases cited; Pollock on Contracts (Text Book Series), top p. 224; Broom's Common Law (9th ed.) 391. If the contract had contemplated a year's service to begin at a future date, it would have been otherwise. We see no reason for reversing the judgment.

*Judgment affirmed. All the Justices concur.*