## JOHNSON *v.* HUDSPETH.

The act of 1901 (Acts 1901, p. 63), as amended by the act of 1903 (Acts 1903, p. 91), in regard to unlawful employment of, renting agricultural lands to, or furnishing lands to be cropped by any person already under contract as the employee, the tenant of agricultural lands, or the cropper of another, is not limited to the wrongful employment of a laborer under contract to work on agricultural lands, but is sufficiently broad to include a laborer employed in the turpentine business.

FEBRUARY 17, 1910.

Action for damages.    Before Judge Worrill.    Early superior court.    October 18, 1908.

W. A. Johnson brought suit for damages against Julius Hudspeth.    Among other things he alleged as follows:   On or about the 25th day of December, 1907, the plaintiff and Guss Weems entered into a verbal contract, by the terms of which Weems was to work for the plaintiff on his turpentine farm from January 1, 1908, until December 31, 1908.    The agreement was that Weems was to work five and a half days each week during the year 1908.    The contract was witnessed by A. H. Hartsfield.    Under it the plaintiff advanced to Weems the sum of sixty dollars.    While the contract was still in existence, Julius Hudspeth employed Guss Weems.    He did this without the written consent of the plaintiff, and allowed him to remain on his premises over the protest of the plaintiff, and after the plaintiff had notified him of the existing contract.    The plaintiff prayed for judgment in double the amount which he contracted to pay Weems, to wit, the sum of $572.00.    The defendant demurred to the petition, because it set forth no good cause of action, and because it showed that the employment of Weems by the plaintiff was

in a capacity other than as an agricultural laborer, tenant, or cropper of agricultural lands, in that he was employed as a turpentine laborer. The presiding judge sustained the demurrer and dismissed the petition. The plaintiff excepted.

*Pottle & Glessner* and *Raines & Gurr,* for plaintiff.

*R. H. Sheffield,* for defendant.

LUMPKIN, J. The sole question argued in this case was whether the act of 1901 (Acts 1901, p. 63), as amended by the act of 1903 (Acts 1903, p. 91), applied only to employing or disturbing the relation of a person already under contract, made in the manner therein provided, as an agricultural laborer, tenant, or cropper of agricultural lands, or whether it also applied to the wrongful employment of a laborer engaged in work on a "turpentine farm;" in other words, does the act merely inhibit the wrongful hiring of "an agricultural laborer"? Prior to the act of 1901, the Penal Code contained provisions in regard to knowingly employing the servant, cropper, or farm laborer of another, who was under written contract attested by one or more witnesses, and in regard to knowingly enticing or attempting to entice away a servant, cropper, or farm laborer. Penal Code, §§ 121, 122; *Hudgins* v. *State, 126 Ga.* 639 (55 S. E. 492). The right to a civil action remained as at common law. *Jones & Jeter* v. *Blocker,* 43 *Ga.* 331. In 1901 an act was passed the title of which was as follows: "An act to make it unlawful for any person to employ or contract with, as tenant or cropper, any person under contract with another; to provide certain penalties and defences, and for other purposes." The first section provided as follows: "Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that when the relation of employer and employee, or of landlord and tenant of agricultural lands, or of landowner and cropper, has been created by written contract duly executed before an officer authorized to administer oaths, it shall be unlawful for any person, during the life of said contract made and entered into in the manner above prescribed, to employ or to rent lands to or to furnish lands to be cropped by said employee, tenant, or cropper, or to disturb in any way said relation, without first obtaining the written consent of said employer, landlord, or landowner, as the case may be." The second section provided that any person violating the previous section should, at the option of the party alleged to have been injured,

be prosecuted for a misdemeanor, or he should be liable in damages to the injured party, as follows: "(1) In case of employer and employee, the damages shall not be less than double the amount of wages or salary for the entire period of said contract. (2) In case of landlord and tenant, or of landowner and cropper, the damages shall not be less than double the annual rental value of the lands rented or cropped, said value to be fixed at 1,000 pounds of middling lint-cotton to the plough." The third section declared that in addition to. other defenses certain specified defenses should be good and sufficient, "when proved in every item to the satisfaction of the jury." The fourth section declared that the act should not apply when the employment given was of such duration and of such nature as to make it certain that it could not result in injury to the plaintiff or prosecutor. The fifth section repealed conflicting laws and parts of laws. The act of 1903 amended the title of the act of 1901 so as to read as follows: "An act to make it unlawful for any person to employ or to rent agricultural lands to, or to furnish lands to be cropped by, any person already under contract as the employee, the tenant of agricultural lands, or the cropper of another; to provide certain penalties and defenses, and for other purposes." The first section of the former act was amended so as to read as follows: "That when the relation of employer and employee, or of landlord and tenant of agricultural lands, or of landowner and cropper, has been created by written contract or by parol contract partly performed, made in the presence of one or more witnesses, it shall be unlawful for any person, during the life of said contract made and entered into in the manner above prescribed, to employ, or to rent lands to, or to furnish lands to be cropped by said employee, tenant, or cropper, or to disturb in any way said relation, without first obtaining the written consent of said employer, landlord, or landowner, as the case may be." The remaining sections of the act of 1901 were left undisturbed. Looking first at the title as amended by the act of 1903, it declared that it was "unlawful for any person to employ or to rent agricultural lands to, or to furnish lands to be cropped," etc. It did not say to employ in working agricultural lands, but in the alternative to employ, or to rent agricultural lands to, or to furnish lands to be cropped by a person of a certain character. Here are three things mentioned disjunctively, and not as synonymous

or concurrent.    In referring to the person who could not thus be dealt with, he was mentioned as "any person already under contract as the employee, the tenant of agricultural lands, or the cropper of another."    The word "employee" is not identical with either of the other two descriptive expressions.    A cropper may be, in a certain sense, an employee or laborer; but if it were not intended to refer to something more than this relation, the use of the word "employee" as a separate and distinct enumeration would have been mere surplusage.    The same thing is true as to the body of the first section of the act as amended.    It declares, that "when the relation of employer and employee, or of landlord and tenant of agricultural lands, or of landowner and cropper, has been created," etc.    The relation of employer and employee is not restricted to employment upon a farm.    The expression "landlord and tenant of agricultural lands" is a distinct expression, separated from the former one by a comma, and does not qualify the words preceding it.    The words "of agricultural lands" could hardly be claimed to qualify the words "employer and employee," otherwise we would have the somewhat peculiar expression that when the relation of "employer and employee of agricultural lands" has been created.    Again, it is declared unlawful, during the life of an existing contract, made and entered into as prescribed, "to employ, or to rent lands to, or to furnish lands to be cropped by said employee, tenant, or cropper."    As above mentioned, in making provision in regard to the recovery of damages two distinct divisions are made.    First, it is declared that "in case of employer and employee" the damages shall be as specified.    Here nothing is said as to any peculiar character of employer and employee, or as to limiting the employment to farm labor.    Still further, in mentioning certain defenses which may be made, it is said, "that prior to employing or otherwise contracting with said employee, tenant, or cropper," etc.    This refers to a tenant or cropper as distinct, and not as limiting the term "employee" to any particular kind of service.

Whatever surmises may be indulged in as to the possible purpose of the draftsmen of these acts in preparing them, or of the legislature in passing them, when that body has used plain language in an enactment, we must give effect to it; and we are unable to say that the expression "employer and employee," repeatedly used, means

only an employee of a farmer or owner of agricultural lands. In the criminal statutes mentioned above it was declared to be penal to knowingly employ, during the term of a previous employment, or to entice away the "servant, cropper, or farm hand of another." Would it be contended that, because the words, "cropper, or farm hand," were applicable only to persons working on agricultural lands, the word "servant" should be confined to a servant employed by a farmer or owner of such lands? Surely not. Then how is it to be said that the words, "the relation of employer and employee, or of landlord and tenant of agricultural lands, or of landowner and cropper," do not refer to the relation of employer and employee except where the employer is a farmer? The sustaining of the demurrer was erroneous.

*Judgment reversed. All the Justices concur.*