The State v. Bayne.

━━━━━━━━

## THE STATE v. BAYNE, *Appellant.*

1. **Pleading, Criminal**: INDICTMENT: FALSE PRETENSES. An indictment under Revised Statutes, section 1561, for obtaining money by means of a false and fraudulent representation, which follows the form prescribed by that section, is sufficient.

2. **False Pretenses**: EVIDENCE. The evidence in this case held sufficient to go to the jury and to justify the court in overruling defendant's demurrer thereto.

8. **Practice, Criminal**: FALSE PRETENSES: EVIDENCE: INTENT. In a prosecution under Revised Statutes, section 1561, for obtaining money by means of a false and fraudulent representation, acts of the defendant similar to the one for which he is being tried, committed near the same time and in the same city, are admissible against him for the purpose of showing the intent with which the act charged was done. (Affirming *State v. Myers*, 82 Mo. 558).

The State v. Bayne.

4. **Practice in Supreme Court: EXCEPTIONS: INSTRUCTIONS.** Where no exceptions are saved at the time to the action of the court in refusing instructions, they will not be considered in the appellate court.

5. **A** series of instructions upon the law of obtaining money by means of false and fraudulent representations examined and approved.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

AFFIRMED.

*M. A. Fyke* and *Burris & Goldsby* for appellant.

(1) The motion to quash should have been sustained. It was necessary to allege and prove that the money was obtained with intent to cheat and defraud. R. S., sec. 1561; *State v. Fancher*, 71 Mo. 460. (2) Defendant's demurrer to the evidence should have been sustained. There is nothing whatever in the evidence to show that defendant intended to cheat or defraud the witness, neither is there any trick or other thing developed by the testimony which constitutes any offence whatever under section 1561. *Rainey v. People*, 22 N. Y. 413. (3) The court erred in admitting the evidence of Gen. P. Frost. (4) The first instruction given by the court is clearly wrong, and the second and third are erroneous in that they seem to cast the burden of proving the good faith of the transaction upon defendant. The ninth is a comment upon the evidence. (5) The court erred in refusing defendant's instructions. The proposition of law contained in the first instruction asked by defendant, and refused, has met with the sanction of this court in many cases. *State v. Verbach*, 66 Mo. 168; *State v. Chunn*, 19 Mo. 233; *State v. Evans*, 49 Mo. 542.

*B. G. Boone,* Attorney General, for the state.

The indictment follows the form prescribed by the statute (section 1561) and is sufficient. *State v. Simmons,* 12 Mo. 268 ; *State v. Ragan,* 22 Mo. 459 ; *State v. Schieneman,* 64 Mo. 386 ; *State v. Chumley,* 67 Mo. 41 ; *State v. Fancher,* 71 Mo. 460 ; *State v. Porter,* 75 Mo. 171. It was not necessary to charge that the offence was committed with intent to cheat and defraud Brooker. *State v. Scott,* 48 Mo. 422 ; *State v. Smallwood,* 68 Mo. 192 ; *Morton v. People,* 47 Ill. 468. The testimony of the witness, Frost, for the state, as to similar acts of defendant, was competent for the purpose of showing the intent with which the act charged was done. *Com. v. Turner,* 3 Met. 19 ; *State v. Meyers,* 82 Mo. 558, and cases cited. No error was committed in giving and refusing instructions.

NORTON, J.—This indictment is framed on section 1561, Revised Statutes, and follows the form prescribed in said section and is sufficient, under the rulings of this court, in the cases of *State v. Fancher,* 71 Mo. 460 ; *State v. Connelly,* 73 Mo. 235, and *State v. Norton,* 76 Mo. 180.

At the close of the evidence on the part of the state, defendant asked an instruction in the nature of a demurrer to the evidence, which was overruled, and this action of the court is assigned as error.

The disposition of this question involves a consideration of the evidence, which is substantially as follows :

Brooker, whose money was alleged to have been obtained by defendant, testified and said : " I was hunting work when I saw a card advertising for parties wanting employment, and obtained the address of J. W. Bayne, Adams House, Kansas City, as the party advertising. I came to Kansas City, saw Bayne in August, 1885, at the

Adams House, where he agreed to give me thirty-five dollars per month and expenses to travel for him and teach others how to make pictures. He also agreed to show me how to make the pictures and furnish me an outfit. For this he charged me fifteen dollars. I paid him this amount, and he agreed to send me out the next night, and after several days he gave me sixty-five cents to pay my way to Liberty, Mo. I went to Liberty and staid one day. He promised to have the outfit there for me inside of three days. I stayed there until my money gave out, and then came back to Kansas City, where I met Bayne on the street. When he met me he said, 'Hello, you snoozer, are you back again?' I told him I was out of money, and he paid for my breakfast and bed, and said he would send me out the next night. I staid until the next night, and as nothing was done I went to see an officer, and told him about the matter and then went back to see Bayne and asked him when he was going to send me out. He said he would send me out as soon as he got ready. The fifteen dollars was for teaching me how to make pictures, and for furnishing me with a job. He was to procure an outfit from St. Louis in a few days. Bayne said he was traveling for J. C. Somerville, of St. Louis. The arrangement was that I was to travel from town to town and teach others how to make the pictures as Bayne had taught me. I was to charge thirty dollars for my instructions, fifteen dollars of which I was in each case to send to Bayne. The fifteen dollars I gave Bayne was all the money I had. After I had paid Bayne, he kept me coming day after day for several days, and finally gave me sixty-five cents, with which I paid my way to Liberty, where he directed me to go."

On cross-examination, witness said: "The money I was to receive as a salary was to come out of what I earned. Bayne taught me how to make or enlarge pictures, as he agreed to. I felt that I was qualified to go

out and teach others, as Bayne had taught me. I am not able to say that the instructions I received from Bayne are of no value."

Frost, another witness for the state, testified to the same effect as to Bayne having obtained fifteen dollars from him in the same way he obtained the money from Brooker.

J. C. Somerville, of St. Louis, whom Bayne claimed to represent, testified that he did not know defendant; that he never had been his agent, nor had he ever received any orders for supplies from Bayne.

Officer Snow, who arrested Bayne, testified as to the statements made by Brooker and Frost to him prior to Bayne's arrest, and that he saw Bayne, who promised to refund the money he had obtained from the complainants. On his failure to do so the officer went again to arrest him; found he had gone, and apprehended him at the Union depot, in Kansas City, where he was dodging around the cars and attempting to evade the officer.

If the statute on which the indictment is founded were like the New York statute, which makes it an offence to obtain money or property by mock auctions, or "*by any other gross fraud or cheat at common law,*" the case of *Ranney v. People*, 22 N. Y. 414, to which we have been cited, would apply, and the evidence above detailed would not support the indictment. But our statute is widely different and much more comprehensive in its scope. It provides that, "Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person, or persons, any money, property, or valuable thing whatever, * * * by use of any trick or deception, or false and fraudulent representation or statement, or pretense, or by any other means, or instrument or device, commonly called the confidence game, or by means or by use of any false or

bogus check, or by any written or printed or engraved instrument, or spurious coin or metal, shall be deemed guilty of a felony," etc.

If the offence defined by the statute had been limited to obtaining money by a false pretense, the case of the *State v. Vorback*, 66 Mo. 168, cited by counsel, would apply and have justified the court in giving the instruction asked. But it is not so limited, for under the statute, obtaining money from another with the intention of cheating and defrauding "by use of any trick or deception, or false and fraudulent representation," is made a felony. The evidence above detailed tends strongly to show that the money was obtained by defendant from Brooker by the false and fraudulent representation that he was the agent of J. C. Somerville, of St. Louis, and as such, authorized to furnish Brooker with an outfit to enable him to enter in the business on which defendant was to send him. Somerville testified that this representation was false, and that he did not know the defendant. The demurrer to the evidence was properly overruled.

An objection was also made to the evidence of witness Frost, who was allowed to testify that defendant had obtained money of him in about the same manner he had obtained it of Brooker, and near the same time, in the same town or city. In the case of *State v. Myers*, 82 Mo. 558, while the correctness of the general rule (announced in 76 Mo. 351, and 70 Mo. 289), that a distinct crime for which the party might be separately proceeded against, cannot be given in evidence against the prisoner on trial for a single or separate offence, was fully and distinctly recognized, it was expressly held that the rule was not of universal application, but had exceptions, and that in a prosecution founded on said section 1561, Revised Statutes, it was competent for the purpose

of showing the intent with which the act charged was done, to prove similar acts of the defendant done in the same town, about the same time, though at a different time. The authorities referred to in the opinion seem fully to sustain the proposition laid down, and under the ruling in that case, the evidence of Frost was properly received to be considered as the court instructed the jury, only for the purpose of determining the intent with which the act in question was done.

The court gave nine instructions, all of which were excepted to, and refused two asked by the defendant. No exceptions having been taken at the time to the action of the court in refusing the instructions asked by defendant, they will not, for that reason, be considered. Those that were given presented the law of the case fairly to the jury, four of which were as follows :

"1.   If you shall believe and find, from the evidence, that at any time within three years next before the first day of September, 1885, at the county of Jackson, state of Missouri, the defendant, intending to cheat and defraud, obtained from the witness, F. Brooker, any amount of money of any value whatever, the same being the money and the property of the said Brooker, by means of a cheat or a fraud, or a trick or deception, or a false or fraudulent representation or statement, or a false pretense or confidence game, you will find the defendant guilty as charged."

"2.   If you shall find and believe that the only money given to the defendant by the witness, Brooker, was in payment for instructions which he had received in the art of preparing or changing in appearance pictures or photographs, you will find him not guilty."

"3.   If you shall find and believe, from the evidence, that the transaction had between defendant and Brooker was had and entered into in good faith or with an honest intent on the part of the defendant, you will find him not guilty."

The State v. Bayne.

"4. In determining what was the intent of the defendant in obtaining money from the witness, Brooker, provided you find that he did receive any money from such witness, and in determining whether the defendant acted in good faith and with an honest intent in contracting with the witness Brooker, provided you find that he did so contract, you should take into account all the facts and circumstances proven before you."

The fifth, sixth, seventh and eighth instructions are omitted, as no point was made on them, and as they relate in approved form to reasonable doubt, and the rules governing the jury as to credibility of witnesses and in weighing the evidence.

The ninth instruction is as follows:

"9. The testimony introduced before you relative to transactions between the defendant and persons other than the witness Brooker, you should take it into account and give it such weight as you deem proper in determining the intent of the defendant, and his good faith or honesty of purpose in any transaction you may believe he had with said Brooker, but, although you may believe that the defendant behaved dishonestly with such other persons, you cannot convict him unless you shall also further believe and find that he obtained money from said Brooker in a manner such as to constitute crime according to number one of these instructions."

Perceiving no well grounded objection to the instructions given, and finding no error in the record justifying an interference with the judgment, it is hereby affirmed, All concur.