## McCOMMONS et al. v. WILLIAMS.

1. Parol evidence is generally inadmissible to contradict or vary the terms of a valid written instrument.
2. If the writing does not purport to contain all the stipulations of the contract, parol evidence is admissible to prove other portions thereof not inconsistent with the writing.
3. Where it was charged that one who had made a contract for the sale of a stock of goods, prior to the date fixed for making an inventory, selected a large amount of the best goods and claimed to have sold them to a company in which he was at first a partner, and of which he became president and general manager and a stockholder after its incorporation, and that, if he had any power of sale, this was a breach of the trust confided in him, and an act in his own interest, evidence in rebuttal was not subject to the objection of irrelevancy which tended to show the incorporation of the company, that there were fifty-six subscribers for the stock, and that the interest of the defendant therein was comparatively small.
4. None of the other errors assigned require a reversal.

Submitted February 10,—Decided August 17, 1908.

Action for breach of contract. Before Judge Lewis. Greene superior court. September 6, 1907.

R. L. McCommons and others brought suit against J. B. Williams. They alleged, that they had purchased a stock of goods from the defendant under a written contract; that the contract contained no provision whereby the defendant might sell merchandise from its date (November 16, 1906) to January 1, 1907, when it was provided that he should begin to take stock for the purpose of the sale; that they gave him parol permission to continue to sell the stock at retail in the usual course of business between those dates, but that he was not to sell any portion of it at wholesale or in job lots, or ship any of it away; that it was not in contemplation of the parties that the defendant would sell goods to himself, and thus retain for his own use and benefit the most valuable parts of the stock; that the goods consisted in part of certain staple articles, and of certain other articles which depreciated greatly in being carried beyond the season for which they were purchased; that in the usual course of retailing the stock would be uniformly reduced, but by picking the more valuable portions, what was left would not be worth more than one half of the original value; that in December, 1906, the defendant associated himself with others into a company for the purpose of conducting a general retail business in the same town, and on December 29 they were incor-

porated under the name of Farmers' Mercantile Company; that prior to the incorporation the defendant was a partner in the company, and subsequently thereto he was elected president and general manager of its business, and was a stockholder; that in the month of December he selected from the stock of goods which had been sold to the plaintiffs the most valuable line thereof and removed and stored them in a warehouse and vacant store; that if he had authority to sell at wholesale and in job lots he could not validly exercise the power in sales to the Farmers' Mercantile Company, in which he was interested, to the detriment of the plaintiffs' rights which were thus intrusted to him; and that on January 5 they made a written demand on him for the goods so removed, which was refused. Attached to the petition was the written contract, which was as follows: "This contract made the 16th day of November, 1906, between J. B. Williams, party of the first part, and R. L. McCommons, J. H. McCommons Jr., J. M. Thompson, John T. Boswell, and F. E. Boswell, as parties of the second part, witnesseth: (1) The parties of the second part hereby buy the stock of general merchandise, fixtures, etc., owned by J. B. Williams and situate in the store now being operated by him in the Davis building, Greensboro, Georgia. (2) They also agree to take the lease said Williams now has on said building, and said Williams hereby agrees that they shall have the same rights he has to occupy the said building to September 1st, 1906 [1907?], at the same rent he is under contract to pay for said building, to wit, $135.00 per month. (3) Said J. B. Williams shall begin taking stock on January 1st, 1907, and as soon thereafter as stock can be taken payment for the same shall be made to him by the parties of the second part, as follows: At the time the stock is turned over to said purchasers $12,500 (twelve thousand, five hundred dollars) shall be paid in cash, and notes of the same date shall be executed by parties of the second part, payable to the said J. B. Williams on these terms to wit, one fifth (1/5) of the remainder to become due March 1st, one fifth April 1st, one fifth May the 1st, one fifth November 1st, and one fifth December 1st, 1907, each of said five notes to bear interest at eight per cent. from the date on which they are signed as aforesaid. (4) The price to be paid for said stock shall be seventy-five per cent. (75%) actual cost of the stock to J. B. Williams, except as follows: (a) Shopworn or

damaged goods or goods and fixtures that have deteriorated by use are to be valued at their actual worth, and said actual worth is to be agreed on by the parties.   (b) All fixtures and similar articles or property used by the said Williams in the conduct of his business are included in this sale, that is to say 75% of the cost price shall be paid for fixtures, etc., as well as for the stock, except where they are damaged or worn, in which event 75% of present agreed value shall be paid.   (5) Said J. B. Williams shall, before payment is made him for said stock and fixtures, produce satisfactory evidence that title to all the stock, etc., is in him, and that he has a right to sell the same.   (6) Any amount due the wholesale merchants from which said Williams purchased his stock of merchandise, as balance of the purchase-price, shall be paid by the said J. B. Williams; that is to say, said Williams is to guarantee said stock to be free of all incumbrances for purchase-money, etc.   (7) The notes and accounts held and owned by the said J. B. Williams are not included in this sale, and they remain the property of the said J. B. Williams. . (8) Cost of taking stock in order to make this sale shall be borne by the said J. B. Williams.   (9) One half the cost of drawing this contract shall be paid by each side."

Also attached to it was a written demand by the plaintiffs on the defendant, in the following terms: "In order that there may be no room for future misunderstanding of our position, we have reduced to writing and herewith hand you our contentions regarding the portion of the stock of merchandise bought from you by us November 16, 1906, now situated in the warehouse of McWhorter and Armor and also a portion in the storehouse of John. C. Palmer.   We discussed at the time the contract was signed first what should be your rights as to selling the goods between November 16th and January 1st.   We agreed that you might continue to retail your stock to the general public and carry on your business just as you had been doing.   We stated to you that you should not pick the stock and sell job lots of it.   We directed that none of it should be shipped away.   We directed that you should not wholesale it.   We considered that for you to store the most valuable part of this stock as aforesaid, or for you to have sold it in job lots to others who have stored it there, is not a compliance by you with either the spirit or the letter of our contract.   We hereby request you to [furnish] us with an invoice of all the goods stored in the ware-

house or storehouse, regardless of who may now claim them. We hereby state that we are ready to pay for all of said goods as per the terms of the contract. We herewith pay you for all of said goods in the store, of which you have furnished us invoice. In making this payment for so much of said goods as you have offered us, we wish it understood that we do not waive our right to contend for the other goods herein described and which you have so far failed to turn over. We are ready to receive and pay for the remainder of the goods whenever you take stock of the same and notify us of the amount due. We assure you of our desire and purpose to adjust the matter in a spirit of fairness and friendliness." Plaintiffs alleged that by reason of the acts of the defendant as set forth he had injured and damaged them in the sum of twenty-five per cent. of the cost price of the goods, to wit in the sum of $3750, for which, with interest, they prayed a recovery.

The defendant admitted the purchase, but denied that the agreement in regard to sale was as contended by the plaintiffs, or that he was guilty of any breach thereof. He alleged, that, both under the written contract and under what passed between the parties by parol, he had a right to sell from the stock in such quantities as he chose prior to January 1, 1907; that the plaintiffs themselves made purchases from him; and knew of his continuing the business and making other sales; that the Farmers' Mercantile Company was organized on November 22, 1906 (it was chartered in December), and the defendant became a stockholder; that the plaintiffs knew of the sales made by him, and made no objection thereto; that the sales to the Farmers' Mercantile Company were in good faith and were duly paid for; that an inventory was made of the goods remaining in the store on January 1, 1907, and they were delivered to the plaintiffs; and that the plaintiffs requested him to sell numerous articles to the Farmers' Mercantile Company. By amendment it was also alleged that by mutual mistake the written contract did not express the full intention of the parties.

The defendant demurred to the petition of the plaintiffs, and the plaintiffs demurred to the defendant's answer, and also to the amendment thereto. The court overruled the demurrers, except as to a portion of the answer. The jury found for the defendant. The plaintiffs moved for a new trial, which was denied, and they

excepted, assigning error also on their exceptions pendente lite as to overruling their demurrer to portions of the answer. The defendant by cross-bill of exceptions assigned error upon the overruling of his demurrer to the petition.

*James Davison* and *Samuel H. Sibley,* for plaintiffs.

*Miles W. Lewis* and *Park & Park,* for defendant.

FISH, C. J., 1, 2. There are many points of controversy, but the case revolves about one central question: Could the defendant prove that it was agreed between the parties that he could continue to sell goods in the stock until January, 1907, the written agreement being in November, 1906, or was the written contract so complete and unambiguous on its face as to preclude proof of a parol agreement on the subject? We think that it was competent to make such defense. The defendant was conducting a mercantile business of quite large proportions in a town, having stock estimated at from $50,000 to $75,000 in value. The contract of sale to the plaintiffs was dated November 16, 1906. It employed the words, "the parties of the second part hereby buy the stock of general merchandise" etc., but it was evident that it was not intended to pass title immediately by the contract, but that it was an agreement to sell and deliver. Stock was to be taken, beginning January 1, 1907, and payment was to be made partly in cash and partly by notes, "at the time the stock is turned over." The price was to be seventy-five per cent. of actual cost, except that shopworn goods, and goods and fixtures which had deteriorated, were to be valued at their actual worth, to be agreed upon by the parties; and as to damaged or worn fixtures seventy-five per cent. of their actual value was to be agreed on. The vendor, before payment, was to produce satisfactory evidence that he had a right to sell; and "cost of taking stock, in order to make this sale," was to be borne by the seller. From the date of the contract to the time provided for beginning to take stock, and thus to ascertain in detail the goods and their price, was about a month and a half. Nothing was expressly stated as to what should be done as to selling or closing the store in the meantime. The contract evidenced the intention of the purchasers to continue to conduct business at the same stand. Was it the intention of the parties or the plain meaning of the contract that, during the interval named, business should cease, the store be closed, and the deteriora-

tion and loss resulting from such a condition for six weeks should take place? It is rudimentary law that parol evidence can not generally be admitted to contradict or vary the terms of a written contract. Civil Code, §5201. But if the writing is ambiguous, evidence is admissible to explain the ambiguity. Or if the writing does not purport to contain all the stipulations of the contract, parol evidence is admissible to prove other portions thereof not inconsistent with the writing. ·Civil Code, §5204; *Forsyth Mfg. Co. v. Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. R. 28), and citations. Under the terms of this contract it was no violation of the general rule against contradicting a written contract by parol to show what was the agreement between the parties as to the making of sales between the date of the contract and the date when the inventory was to be taken.

Moreover, when the plaintiffs brought this suit, they alleged that there was a parol agreement or permission as to such sales, stated ⸳ what it was, and averred that the defendant had violated its terms. On the trial, they introduced a letter written by them to the defendant on January 5, 1907, stating what were their contentions, one being that there was an agreement for the defendant to continue sales at retail and carry on business in the usual way, but denying that he had the right to pick over the stock or to sell in job lots. After ·this, and after the defendant had testified on the subject, during the progress of the trial, the plaintiffs amended their petition by striking that portion of it which alleged a parol license or permission to sell; but did not withdraw the evidence which they had already introduced on the subject, or move to rule out that of the defendant. Unquestionably the defendant had the right to introduce evidence in regard to his contention. Still further, the evidence complained of is only referred to in the most general way in the motion for a new trial, and is not set out in the brief of evidence.

3. Error was assigned because the court admitted in evidence the subscription list of the stock of the Farmers' Mercantile Company, showing fifty-six subscribers thereto, and their names and the amount of their stock. The ground of objection was irrelevancy. Counsel for plaintiffs in error considered this ruling so serious that in his brief he characterized it as "catastrophic." In the plaintiffs' petition it was alleged that on December 29 the de-

fendant associated himself with others in a company, for the purpose of conducting a general retail business, and they were incorporated under the name of the Farmers' Mercantile Company; that, prior to the incorporation, the defendant was a partner in the company, and subsequently thereto he was elected president and general manager of its business, and was a stockholder therein; that he selected from the stock of goods sold to the plaintiffs the most valuable lines thereof, and removed and stored them in a warehouse and a vacant store; and that, if he had authority to sell prior to January 1, 1907, at wholesale or in job lots, he could not exercise this right by making sales to that company, in which he was interested as stated. It was the evident purpose of the plaintiffs to show that a sale to the company mentioned was not bona fide, and that the defendant acted in bad faith, and in reality sold to himself, at least in part. It was competent for the defendant to rebut this contention by showing that the stock had been subscribed for by fifty-six different people, and that his interest was comparatively small. Interest being asserted as an indication of mala fides and practically dealing with one's self, it was not irrelevant to show, in rebuttal, the limited extent of such interest. If the evidence was sought to be used for any purpose other than that for which it was admissible, or if it was desired to have its effect limited in the consideration of the jury, the presiding judge should have been requested to make a proper ruling or give proper instructions on that subject. The evidence was not so wholly irrelevant as to make it inadmissible on that ground. *Nugent* v. *Watkins,* 129 *Ga.* 382, 385 (58 S. E. 888). If there was no error in admitting it, and no ruling was invoked as to the limited purpose for which the jury could consider it, its admission will not require a new trial. If evidence is admissible on behalf of the defendant for any purpose, though its effect on the plaintiffs' case may be serious, this will not make its admission erroneous as being irrelevant.

4. There were numerous other assignments of error in regard to the pleadings, the evidence, charges of the court, and refusals to charge. In the light of the pleadings, the evidence and the entire charge, none of these would make a reversal necessary.

*Judgment affirmed on main bill of exceptions; cross bill dismissed. All the Justices concur.*