## 7440. BORDERS v. CITY OF MACON.

HODGES, J. 1. Testimony that certain premises occupied by the accused were rented from the witness was not inadmissible on the ground that the lease contract or rent notes would be the·highest and best evidence.

2. Permitting a witness to testify, "I have perhaps seen whisky served there to his customers,—I don't remember when it was," was not error. The fact that a witness does not testify positively goes to the probative strength of the testimony, and not to its competency.

3. A witness may testify to the fact that certain rent notes were paid, without producing record evidence of their payment.

4. Testimony that certain writing looked like the handwriting of the accused was not inadmissible on the ground that the testimony stated a conclusion. The identification of handwriting usually rests upon the conclusion and opinion of the witness making the identification.

5. A witness may testify positively as to the signature of another before he qualifies as a handwriting expert. In this case the witness subsequently qualified as a handwriting expert, and the court did not err in allowing him to testify.

6. Certain rent notes were admitted in evidence, over the objection that they covered a period subsequent to the closing of the premises in question. There was no error in admitting these notes, as the evidence showed that they were a part of a series of notes given for rent for the place in question, the other note having been paid by the defendant, according to the evidence.

7. It was not error to permit a witness to testify, that at the place in question he saw "something that looked like whisky. . . The beverage that I saw there had the appearance of the liquid I have seen and known as whisky, I didn't smell it. It was served in small glasses. I have seen something in small glasses that looked like whisky, served there." The testimony was not inadmissible on the ground that it stated a conclusion. Uncertainty of the witness as to the time referred to affected the probative strength of the evidence, and not its admissibility.

8. It was not improper to permit a witness to testify, that he had seen drays coming to a certain building, in which was a place known as "Borders' Place," with the sign "Merchants Club," and "taking away stuff, apparently whisky; empty whisky barrels, and packages wrapped in paper shaped like bottles;" that negroes went and came with packages; that a dray carried off two or three loads of empty barrels, that they were whisky barrels, to the best of his knowledge and belief, and that there was "a pretty strong odor" of whisky at the place. The evidence was not inadmissible as a conclusion, and was not irrelevant and immaterial.

9. Testimony that the place in question was known as "Borders' place" was not objectionable on the ground that it was hearsay.

10. There was no error in allowing a witness to testify that he had hauled to the building in question some barrels for the accused, which looked like whisky barrels, and that the accused paid him therefor, though he

"could not tell how many gallons to the barrel." This evidence was relevant, and it was not objectionable upon the ground that the contents of the barrels were not identified as intoxicating liquor.

11. It was competent for the landlord's agent to testify, as to the place at which, it was charged, the accused was conducting a liquor business, that he had rented it to the "Merchants Club," and that he did not know anybody connected with the club except the accused. This evidence was relevant.

12. A contract of lease of the premises where, it was charged, the accused was conducting his liquor business, signed, "Merchants Club, Macon, Georgia, per R. H. Borders" (the accused), was admissible when taken in connection with the testimony of the landlord's agent, referred to above, and testimony that the signature was that of the accused.

13. It was proper to permit a drayman to testify that he had taken two barrels for the accused to the building in question, and also that he carried to the former place a little box of case goods, making two dray loads that he carried there, although he testified that he was not personally acquainted with the accused, the witness testifying that "that gentleman [the accused] looks like him." Such testimony was not immaterial and irrelevant, and was not objectionable upon the ground that the witness had not identified the accused as the person employing him, and that it was not shown that the goods were intoxicating liquors.

14. Testimony showing that a witness hauled several barrels of bulk goods for the accused, although he did not know what was in them, that the accused paid him, and that the witness delivered the goods to the place kept by the club named above, was not irrelevant or immaterial.

15. It was not improper to permit a witness to state, over the objection that it was hearsay, that he knew "what is called the whisky stand" (describing the place), and that "that is where they go to get whisky."

16. Permitting a drayman to testify that he knew a certain person other than the accused, and had never delivered anything to him but whisky, was not error, a paper being introduced in evidence at a subsequent stage of the trial as a bill for "5 ca and 5 ca ½ pints bottled in bond $37.75 and $38.00, to R. H. Borders [the accused], Macon, Georgia; ship Jim Strozier," Strozier being the person to whom the witness referred.

17. It was not error to allow a witness to testify that he got from among the papers at what was called the "Merchants Club," in the city of Macon, many personal papers of the accused, among which were bills from dealers in whisky, "sold R. H. Borders, Macon, Georgia, ship Jim Strozier, Macon, Georgia, bill of lading attached, five cases of one kind and five cases of another kind of whisky $77.50," and that the bill of lading of the last-named item came from the custody of the accused and had been in the custody of the witness ever since. Such testimony was not irrelevant or immaterial. It was not necessary to prove the execution or genuineness of the papers, the witness having positively testified that they came from the custody of the accused.

18. It was not error to permit a witness to testify that signatures on

checks paid by the bank on which they were drawn, purporting to have been signed by the accused, were the same as the signatures on his "signature card" at the bank, and on his rent lease. Nor was it error to admit in evidence the signature card referred to. The signature card of the defendant's wife at the bank was likewise admissible, the evidence showing that a certain order for a half-pint of "rye" was found among the papers referred to above, and that the signature on the order was the same as the wife's signature on the bank's signature card.

19. Allowing a copy of the account of the accused with the bank, showing deposits and withdrawals by him, without the production of the original books of the bank, if error, was harmless.

20. The order for a half-pint of "rye" by the wife of the accused, found at the place referred to above, was admissible, the witness testifying that, in his opinion, it was written by the person signing the signature card bearing her name. Two receipts from the express company, for a package of "liquor," with this order, coming from the custody of the accused, were admissible without showing execution.

21. Allowing a witness to testify that all the documentary evidence, save a certain paper, came from the custody of the accused was not a conclusion of the witness, but a statement of fact.

22. The landlord having testified as to the time at which the accused was in possession of the hotel buffet, it was not error to allow a police officer to state that in company with the defendant's counsel he went to the buffet and there found whisky bottles, a seltzer bottle, and a jug and other bottles, and that a bottle containing a half-teaspoonful of whisky was found behind the counter.

23. Testimony that a seltzer bottle is used in making whisky drinks, and that is its customary use, was not a conclusion of the witness, but a statement of fact; and it was competent for the witness to state that the telephone in the office looked as though it had been used.

24. The court did not err in permitting the police officer to testify as to what he saw and found in the premises occupied by the "Merchants Club," the officer stating that he found barrels, whisky glasses, new corks, a lot of empty bottles that smelled like whisky and had a little whisky in them, corkscrews, labels, pasters, a syphon, measures, faucets, funnels, and barrels, and that there was a decided odor of whisky on the premises.

25. It was competent to prove that the accused had never been engaged in any business since he left his employment at the hotel.

26. It was competent to prove that a member of a certain firm was introduced to the witness, and that the witness understood that this firm was engaged in the whisky business in Chattanooga, Tennessee, there being evidence that a certain bank had handled drafts paid by the accused, drawn by this firm.

27. It was not error in the court to permit a witness to testify positively that the firm referred to above was in the whisky business, over the objection that his testimony was gathered from bill-heads and letter-heads, the evidence not showing such to be the source of his knowledge.

28. The remittance book of drafts of a bank, showing drafts drawn by

this firm on the accused on November 30th, and December 1st, 3rd, 4th, and 6th, and also showing other drafts paid by the accused, was ad-missible.

29. Testimony that the witness did not know of any business that the accused had was not irrelevant or immaterial.

30. Documentary evidence identified as having come from the custody of the accused, consisting of an order of his wife for a "Scotch high-ball," notices of drafts from distillers, invoices of whisky, railroad bill of lading for ten cases of whisky, and other papers showing whisky trans-actions on the part of the accused and the alleged club, was ad-missible.

31. Carbon copies (duplicates) of draft remittances were admissible, the evidence showing that the accused paid the drafts.

32. Objection was made in the petition for certiorari that the venue of the alleged offense was not shown, so far as the evidence relates to the place known as the Hotel Lanier buffet. The venue of the alleged crime so far as evidence relates to the place known as the "Merchants Club," or "Borders' Place," was established, and failure to show the venue as to the Hotel Lanier buffet was immaterial.

33. The judgment of the recorder finding the accused guilty was not con-trary to law and the evidence, and the presiding judge did not err in denying the writ of certiorari.  *Judgment affirmed.*

DECIDED JUNE 28, 1916.

Petition for certiorari; from Bibb superior court—Judge Math-ews. March 27, 1916.

R. H. Borders was convicted in the recorder's court of the city of Macon on the charge of having violated a municipal ordinance which made it unlawful to keep a "blind tiger," or keep for sale intoxicating liquors in the city. The case came to this court on exceptions to the refusal of the judge of the superior court to sanction the issuance of a writ of certiorari.

*E. C. Powers, C. H. Garrett,* for plaintiff in error.

*W. D. McNeil,* contra.