## 7793. BATES *v.* THE STATE.

1. It was competent for the State to prove that at or about the time at which, it was alleged, the crime in question was committed, the accused committed with another a similar crime.

2. In order to render testimony admissible as to handwriting, it is not necessary for the witness to state that he is an expert on handwriting. Any witness is competent to testify as to his belief, who will swear that he knows or recognizes the handwriting; the weight, force, and credit to be given to such evidence is a matter entirely for the jury.

3. A witness claiming to be an expert on handwriting, who stated, with reference to the handwriting on several papers, that "the same party wrote all of them," did not state a conclusion, but simply gave an opinion on a question of fact, based upon expert knowledge.

4. The charge of the court with reference to the defendant's statement at the trial, while not entirely correct, was harmless. Trial judges can not improve upon the language of the code with reference to the prisoner's statement.

5. There was no error in the excerpt from the charge of the court with reference to uttering and publishing a check.

6-7. There was no error in the charge of the court with reference to conspiracy on the part of the accused and the codefendant.

8. The accused being separately tried, it was not error for the trial judge to charge the jury that they were not concerned with the guilt or innocence of the codefendant.

9. On the trial of one jointly accused with another of a conspiracy, an instruction to the jury that if they should find that there was a conspiracy, the defendant on trial would be bound by the acts, words, etc., of the other defendant named in the indictment, carried with it the converse of the proposition; and it was not error for the court to fail to instruct the jury that in the event that there was no conspiracy, the defendant on trial would not be bound by the acts, words, or deeds of the codefendant.

10. The evidence authorized the verdict.

DECIDED OCTOBER 24, 1916.

Indictment for uttering forged checks; from Upson superior court—Judge Searcy. July 12, 1916.

*J. Y. Allen, James Beall,* for plaintiff in error.

*E. M. Owen, solicitor-general, M. H. Sandwich,* contra.

HODGES, J. Matthew Bates was convicted upon an indictment charging that he did fraudulently make, sign, and print, and was concerned with the fraudulent passing and uttering of a certain check, together with one Marcellus Bates. His motion for new trial was overruled and he. excepted.

1. The trial judge admitted in evidence a certain conversation between the sheriff, another witness, and one Dr. Fogg, deceased, in which the doctor in the presence of these parties and the accused, made a statement, in substance as follows: "This defendant, in company with a man who claimed the name of Williams, came to my office some time ago, and the defendant had some dental work done. I did the work and the defendant paid me $2.50 for the same. A man by the name of Williams was with the defendant, whom I took to be his brother. Williams went out of the office while defendant was having the work done, and it was not long before Williams returned with a check, purported to have been signed by S. T. Bently, payable to J. A. Williams, and indorsed on the back by J. A. Williams, which check he asked me to indorse for him, as he was not acquainted in Barnesville; which I did. You have the same check there in your hands, with my indorsement on it. The defendant paid me in cash out of his pocket before the man Williams got the check cashed, if he got it cashed at all. I took the defendant and the man named Williams to be brothers." In admitting this testimony the trial judge did not err. In the case of *Farmer* v. *State,* 100 *Ga.* 41, 43 (28 S. E. 26), Simmons, C. J., said: "It is further complained that the court erred in admitting the testimony of the witness Stovall, to the effect that about the same time that the alleged misrepresentations which were the basis of this prosecution were made by the accused, similar representations were made by him to the witness. The objection made to this testimony was that there was no connection between the representations of the accused to Stovall and those alleged to have been made by him to the prosecutor; the representations to Stovall not having been communicated to the prosecutor when his firm extended credit to the accused. The testi-

mony was offered and admitted as tending to illustrate the intent of the accused in the transaction for which he was then being tried; and for this purpose we think it was properly received. While it is the general rule that upon the trial of a person for a criminal offense other and distinct criminal transactions can not be given in evidence against him, yet, according to the weight of authority, evidence of other representations or transactions may be received, as tending to show motive or intent, when the transactions are so connected in time and similar in their other relations that the same motive may reasonably be imputed to all. See 1 Jones, Ev. § 143, and cases cited; 1 Greenleaf, Ev. (15th ed.) § 53 and notes; Wharton, Crim. Ev. § 53; 1 Bishop, New Crim. Proc. §§ 1126, 1127; 2 Id. § 189. Justice Story states the principle thus: 'In all cases where the guilt of the party depends upon the intent, purpose or design with which an act is done, or upon his guilty knowledge, I understand it to be a general rule that collateral facts may be examined into in which he bore a part, for the purpose of establishing a guilty intent. In short, whenever the guilty knowledge or intent of the party is a material ingredient in the issue of a case, these collateral facts, that is, other acts and declarations of a similar character, tending to establish such intent or knowledge, are proper evidence. In many cases of fraud it would be otherwise impossible satisfactorily to establish the true nature and character of the act.' (Bottomby *v.* United States, 1 Story's Rep. 135.) A well-considered case in which the question is discussed at length, and authorities bearing upon it reviewed, is that of Trogdon *v.* Commonwealth, 31 Grattan (Va.), 862. In that case it is said: 'Upon a prosecution for obtaining goods by false pretenses the indictment must aver the fraudulent intent, and the commonwealth must prove it. It is the very gist of the offense. . . It is not sufficient that the accused knowingly states what is false. It must be shown that his intent was to defraud. Such intent is not a presumption of law, but a matter of fact for the jury. Being a secret operation of the mind it can only be ascertained by the acts and representations of the party. A single act or representation in many cases would not be decisive, especially where the accused has sustained a previous good character. But when it is shown that he made similar representations about the same time to other persons, and by means of such

representations obtained goods, all of which were false, the presumption is greatly strengthened that he intended to defraud." See, among other cases on this subject: Regina v. Francis, 2 C. C. R. 128, 12 Cox's Crim. Cases, 612; Wood v. United States, 16 Peters, 342. [10 L. ed. 987]; Commonwealth v. Jeffries, 7 Allen, 548 [83 Am. D. 712]; Commonwealth v. Eastman, 1 Cush. 189 [46 Am. D. 596]; Commonwealth v. Coe, 115 Mass. 481; Mayer v. People, 80 N. Y. 364; People v. Shulman, Id. 373; State v. Walton, 114 N. C. 783; State v. Myers, 82 Mo. 558 [52 Am. R. 389]; State v. Bayne, 88 Mo. 604; State v. Rivers, 58 Iowa, 102 [12 N. W. 117, 43 Am. R. 112]; Rafferty v. State, 91 Tenn. 655 [16 S. W. 728]. See note to Strong v. State, 44 Am. R. 292."

The doctrine recognized by the learned Chief Justice, in *Farmer* v. *State,* supra, long ago had the approval of the Supreme Court of the United States. In the case of Wood v. U. S., 16 Peters, 342, it was said: "It has always been allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party of a kindred character, in order to illustrate his intent or motive in the particular act directly in judgment." The same rule was applied by the Supreme Court of this State in the case of *Frank* v. *State,* 141 *Ga.* 243 (80 S. E. 1016), where it was said: "The general rule on this subject has been stated by the Court of Appeals of New York in People v. Place, 157 N. Y. 584 (52 N. E. 576) as follows: 'It is an elementary principle of law that the commission of one crime is not admissible in evidence upon the trial of another, where its sole purpose is to show that the defendant has been guilty of other crimes, and would, consequently, be more liable to commit the offense charged. But if the evidence is material and relevant to the issue, it is not inadmissible because it tends to establish the defendant's guilt of a crime other than the one charged.' In *McCommons* v. *Williams,* 131 *Ga.* 313 (62 S. E. 230), a similar principle was recognized in a civil case. It was said (p. 319): 'If evidence is admissible on behalf of the defendant for any purpose, though its effect on plaintiff's case may be serious, this will not make its admission erroneous as irrelevant.' See also *Nugent* v. *Watkins,* 129 *Ga.* 382 (2), 385 (58 S. E. 888). Under this doctrine, collateral facts are not to be rejected merely because they show the commission of some crime other than that for which the accused is on trial, but they will be admitted, not-

withstanding they may show the commission of other crimes, if they tend to illustrate the defendant's guilt or innocence of the crime for which he is being tried. In 3 Bishop's Crim. Proc. (2d ed.) § 629, subsec. 4, it is said: 'Any motive rendering the killing probable or explaining it against inherent improbabilities, or otherwise helpful to the jury as a circumstance, may be proved against the defendant.' In People *v.* Molineux, 168 N. Y. 264 (61 N. E. 286, 62 L. R. A. 193), the subject of the admissibility of evidence on the trial of one indicted for murder, which tended to prove other crimes, was considered at length, both in the opinion of the majority of the court, rendered by Werner, J., and in the dissenting opinion of Parker, C. J. Many cases bearing on the subject are also cited in the note to the same case in 62 L. R. A. 193. To undertake to discuss the numerous decisions on this subject would unduly prolong this opinion. We will only refer to a few of them. In the Molineux case, Werner, J., said: 'Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing commission of two or more crimes so closely related to each other that proof of one tends to establish the others, (5) the identity of the person charged with the commission of the crime on trial.' In that case it was contended by the State that the accused had caused the death of the decedent by sending through the mail a bottle which purported to contain bromo seltzer, but which contained also, mixed with the bromo seltzer, a powerful poison, with intent to kill another person. Evidence was offered to show that another person had received by mail another powder purporting to be Kutnow powder, with which was also mixed the same powerful poison, and that this had produced the death of the person to whom it was sent. There was certain other evidence which it was claimed tended to point to the fact that the accused sent both powders. The majority of the court held that the evidence in regard to the murder of the other person was not admissible. In the opinion of Werner, J., in discussing the question of motive, he based his argument in regard to the inadmissibility of the evidence mentioned upon the fact that the motive of the two murders was different. He said that the motive assigned for the attempt to kill the person to whom the poisoned bromo seltzer was

sent was hatred engendered by quarrels between him and the accused, in which the person to whom the poisoned Kutnow powder was sent took no part, and of which, so far as the record shows, he had no knowledge; while the motive which was said to have moved the defendant to kill the person to whom the poisoned Kutnow power was sent was jealousy caused by the latter's intervention in the love affairs of the accused. He therefore declared that the statement of these two motives was sufficient to show that they had no relation to each other, and that the evidence which tended to prove the one killing threw no light upon the motive which actuated the other attempt. . . In his able dissenting opinion, Parker, C. J., after stating the general rule that evidence of the commission by a person of other crimes is not admissible upon the trial of a defendant, added: 'But it has never been held by any court of responsible authority that the people can not prove the facts constituting another crime, when those facts also tend to establish that the defendant committed the crime for which he is on trial.' . . In Peoples v. Harris, 136 N. Y. 423 (33 N. E. 65), it was held, in the prosecution of a man for the murder of his wife, that evidence that seven months after his marriage to the deceased the defendant was at a hotel in illicit relations with another woman, to whom he suggested that she marry some old man with plenty of money, and that if she found one they could give him a pill and get him out of the way, was admissible on the question of motive, though it tended to show the commission of another and distinct crime, and involved the character of the accused. It will be seen that the evidence was not admissible to prove the general character of the accused, but was admissible as tending to show motive, athough incidentally it involved his character." In *Frank's* case the court further ruled that the evidence was admissible to show a common scheme or plan of related offenses; and, in the opinion of the writer of this opinion, this is the only sound principle upon which it was admissible. Regardless of the view of the writer, it seems that the weight of authority makes such evidence admissible. In the instant case, according to the evidence, an offense similar to that charged in this case was perpetrated by the accused, with the codefendant, about the same time, in another city; and under the rule adopted in Georgia, evidence as to that offense was admissible, as tending to show

a common scheme or plan of related offenses on the part of the persons accused jointly in the indictment, and also as identifying the accused.

2. It is competent for any witness to prove handwriting, such proof always being based upon the opinion of the witness, and it is unnecessary for the person testifying to state in his testimony that he is an expert. Penal Code, § 1042; *Borders* v. *Macon,* 18 *Ga. App.* 333 (89 S. E. 451).

3. When one qualifies as an expert witness as to handwriting and testifies, as to certain papers, that "the same party wrote all of them," he does not state a mere conclusion, but gives his opinion based upon his expert knowledge. In this case the witness qualified as an expert, the papers were before the court and jury, and it was for the jury to say what weight, force, and credit they would give to the opinion of the witness who swore that he was an expert in handwriting, and the court did not err in admitting the testimony.

4. While it is true that the charge of the court as to the prisoner's statement may be somewhat inapt, there is no merit in the contention that the judge erred in charging that the prisoner "incurs no penalty in not speaking the truth." Of course, the jury, from a mere reading of the statute giving the defendant the right to make a statement not under oath, would understand that the accused, in taking advantage of his right under the law, would incur no penalty if he failed to speak the truth. It is the better practice for trial judges, in charging upon the defendant's statement, to confine themselves to the statute just as it reads. It can not be improved upon, so long as it remains of force.

5. Exceptions are taken to the following excerpt from the charge of the court: "If you do not believe that the defendant uttered, or published, or discounted this check—cashed it, at the bank alleged in the indictment, or if you do not believe that he knew it was a forged check, or do not believe that this defendant intended to defraud the parties named in the indictment, or any of them, or, if you do not believe that the Upson Bank & Trust Company and parties named in the indictment or some of them were defrauded, or suffered a loss of money by reason of having cashed this check, or have a reasonable doubt of it either from the evidence furnished by the State or the defendant, including his statement,

or from both considered together, it would be your duty to acquit the defendant." This excerpt, construed with the entire charge of the trial judge, stated the law of the case, and the exception thereto is without merit.

6-7. The following excerpts are not subject to exception: "The State contends that the defendant is guilty of violating these laws, and depends for conviction upon the proof offered by certain facts and circumstances, which the State claims by their consistency to support the contention of the State, that the defendant is guilty. In other words, the State's contention is that this defendant is guilty because he conspired with the other defendant named in the indictment to commit the offense charged against him. If you find one did the act or acts alleged in the indictment, alleged to be an unlawful act or acts, then find whether the other defendant was present or not, whether or not he was aiding or abetting the act to be done, participating in it, either by acts, or words, and whether they were acting or not with a common intent and purpose in concert."

8. On the trial of one jointly indicted with another, it is proper for the court to charge the jury that they are "not concerned with whether or not" the alleged codefendant is guilty. In this case this charge was not confusing and did not in any way conflict with the excerpts above excepted to.

9. The court properly charged the law of conspiracy, and, there being no timely written request for a more complete exposition of the principles controlling the case upon that subject, the failure of the trial judge to expound more elaborately than he did the rule of conspiracy was not error.

10. The accused had a fair and impartial trial; the issues of fact were passed upon by the jury and resolved against him, and this court has no jurisdiction to set aside such a verdict. No error of law was committed, and the judgment overruling the motion for a new trial is　　　　　　　　　　　　　　　*Affirmed.*