## McCALL *v.* MILLER.

1. To authorize the setting aside, in an equitable proceeding, of a verdict and judgment, on the ground that the defendant therein had, by reason of his sickness, been prevented from being present at the trial, it must appear, not only that his absence was from such cause, but that had he been present there would probably have been a different result and one more favorable to him. A verdict was directed against a defendant and judgment entered thereon, for the failure of his counsel to comply with a peremptory order of

court, duly granted, directing such counsel to produce on the trial a certain written instrument, which the order recited was then in his possession and contained evidence material in the case, the defendant being absent, on account of his sickness, when such verdict and judgment were rendered. *Held*, that the facts recited did not make a case, within the above-stated rule, for setting aside the verdict and judgment.

2. The amount of the verdict and judgment sought to be set aside was not more than was authorized under the facts of the case in which they were rendered.

Submitted January 25, — Decided June 8, 1904. ·

Equitable petition.      Before Judge Mitchell.      Brooks superior court.      June 18, 1903.

*J. G. & J. F. McCall*, for plaintiff in error.
*Bennet & Bennet* and *J. D. Kilpatrick*, contra.

FISH, P. J.    The record in this case is somewhat confused. We gather, however, from the original petition of E. J. Miller, the exhibits attached thereto, and amendments to the same, the following facts.    On January 24, 1900, during the November, 1899, adjourned term of the superior court of Brooks county, verdict and judgment were rendered in favor of J. H. McCall against E. J. Miller and the sureties on his bond given to dissolve a garnishment, in the case of J. H. McCall *v.* A. P. Ashurst, defendant, M. Brice, garnishee, and E. J. Miller, claimant, who had traversed the answer of the garnishee and upon which traverse an issue had been formed, judgment having been previously rendered against the defendant, Ashurst, in the main case.    In 1898, during the pendency of the garnishment and claim case, counsel for Miller had been served, at the instance of the plaintiff, with written notice to produce, upon the trial of that case, a certain letter from the plaintiff to Miller, dated August 25, 1895, alleged to contain evidence pertinent to the issue in the case and to be used as evidence in behalf of the plaintiff.    Upon the call of the garnishment and claim case on January 23, 1900, during the said November adjourned term, counsel for Miller, in response to the notice to produce such letter, stated to the court that he had the letter in his possession but was unable to produce it, for the reason that it was then in Moultrie.    The court thereupon passed a peremptory order requiring counsel for Miller to produce such letter on the trial, to be used as evidence for the plaintiff.    On the next day, January 24, upon the call of the case for trial, verdict and judgment were

rendered against Miller and the sureties on his bond to dissolve the garnishment, for the failure of his counsel to produce such letter in accordance with the peremptory order of the court. (Counsel for Miller, in their brief, say: "The court directed a verdict in favor of plaintiff in error on account of this failure to produce said letter.") Miller's equitable petition, brought January 27, 1900, against J. H. McCall and the clerk of the court, sought to set aside this judgment. The grounds upon which it was sought to set it aside were: (1) Because petitioner did not know that an adjourned term of Brooks superior court would be held on January 22, 1900, and if he had known it he could not possibly have attended, as he was seriously sick at that time; that his counsel wired him on Monday, January 22, that the case would be reached, and that he immediately wired his counsel that it would be impossible, on account of his sickness, to attend court; that he would have been present but for his sickness; that the presence and testimony of petitioner was necessary for a successful presentation of his case to the jury, and "that his attorney could not have presented said case before the court, without petitioner being there in person." (2) Because his counsel had leave of absence from the November, 1899, term of the court and, having removed from Quitman to Atlanta about December 1, 1899, did not know that an adjourned term of the court would be held on January 22, 1900, until he saw a notice of it in a newspaper on Saturday, January 20; that on January 18 his counsel, having heard a rumor to the effect that the adjourned term would be held, wrote to plaintiff's attorney requesting him to wire petitioner's counsel if a trial of the case would be insisted on, and suggesting that the case be referred to an auditor, and that as no reply to his letter was received, his counsel thought that his suggestion of a reference to an auditor was satisfactory; that petitioner's counsel arrived at Quitman on January —, but did not succeed in seeing plaintiff's counsel until ten o'clock, a. m., on January 22, when he first learned that the trial of the case would be urged; that his counsel immediately wired petitioner to come, and petitioner replied, by telegram, that his serious sickness prevented, as stated above, and petitioner also wrote to his counsel on the same day that he was too ill to attend court then, and to have the case postponed until the latter part of the week, when he would be present, but his

counsel did not receive this letter until January 24; that when his counsel removed from Quitman to Atlanta, he left the letter which he had been notified to produce, among the papers in his office at Quitman, and expected to find it there, but when he went to get it, he found that his former law partner had carried this letter, with other papers, to Moultrie, and it was impossible for him to get the letter before the case was called for trial, and petitioner, on account of his serious illness, could not furnish his counsel with proper evidence for a legal showing for a continuance, and judgment was given against petitioner. (3) Because the amount for which the judgment sought to be set aside was rendered exceeded the amount which McCall, the plaintiff in that case, was entitled to recover, for the reason that McCall's contention in that case was, that Ashurst, his agent, had taken an order for a monument from Brice, which McCall was to furnish him, which order McCall contended Ashurst had transferred to petitioner, with notice on his part of McCall's interest in such order, and that if McCall was entitled to recover anything from petitioner, it would only be the profit which McCall would have made by furnishing the monument, which would not have exceeded $150.00. The petition, as amended, was demurred to, on the following grounds: (1) want of equity; (2) that it appeared from the petition that petitioner was represented by his counsel, who was present in the court when the judgment was rendered; and (3) that it also appeared from the petition that the petitioner was seeking to take advantage of his own laches. The demurrer being overruled, exceptions pendente lite to such ruling were filed by the defendant. Upon the trial a verdict was rendered in favor of the petitioner, setting aside the judgment. Plaintiff moved for a new trial upon various grounds, which being overruled, he excepted, also assigning error upon his exceptions pendente lite.

1. The view we take of the case renders it unnecessary to pass on the motion for a new trial. In our opinion, the general ground of the demurrer to the petition as amended should have been sustained. Considering the facts alleged in the petition and ignoring the mere conclusions of the pleader, the petitioner was not entitled to the relief for which he prayed. When a regular term of court is adjourned over to a subsequent time, all parties and their attorneys having business in the court are bound at

their peril to take notice of such adjourned term. *Rawson* v. *Powell*, 36 *Ga.* 255. "The judgment of a court of competent jurisdiction may be set aside by a decree, for fraud, accident, or mistake, or the acts of the adverse party unmixed with the negligence or fault of the petitioner." Civil Code, §§ 3987, 5370. In *Clifton* v. *Livor*, 24 *Ga.* 91, it was held: "If a party is prevented by sickness from appearing at the proper court, at the proper time, to make his defense at law, he is entitled to relief in a court of equity." There a bill was filed to set aside a sheriff's sale made under a mortgage execution and to enjoin the execution of the fi. fa. The bill alleged that the complainant was too sick to attend the term of the court at which the rule absolute was granted, until late in the evening of the second day of the term, and that when he arrived the rule had been made absolute, although he was informed by his counsel that he, in complainant's behalf, had urged the court to allow complainant until the last day of the term to file his affidavit in terms of the law, which the court refused to do. The bill set out a valid defense, which the complainant would have set up if he had been present. Chief Justice Lumpkin, in delivering the opinion, said, "it is against just such accidents [as the sickness of the complainant] that a Court of Chancery will grant relief." It seems, however, that a different rule was applied in *Woodward* v. *Dromgoole*, 71 *Ga.* 523. There a bill was brought to set aside a verdict in ejectment, and for injunction, etc. The bill alleged that the complainant was notified by his attorney that the ejectment case against him stood for trial, but that some eight or ten days before that time he was taken ill in Louisville and could not attend the court; that when the case was put on the calendar for trial, his attorney telegraphed to him; he wired back that he was too sick to attend; he did not know that more was required, and he was unable to do more; he also instructed his attorney to consult with another named attorney, whom he desired to represent him, but had been unable to see; that these two attorneys consulted together, and failing to obtain a continuance, and in good faith, deeming it the best thing to be done, filed an equitable plea, alleging that complainant had paid to the plaintiff a large part of the purchase-money, and praying that the property be sold, the purchase-money paid, and the balance turned over to complainant; that an agreed verdict was rendered accordingly, and that the property

had been advertised for sale; that this was without the approval of complainant, and his attorneys did not know fully the facts of his defense; and that as soon as complainant learned what had been done, he expressed his disapproval and filed the bill. This court reversed the grant of an injunction by the trial judge. Justice Blandford, in delivering the opinion, said that, applying the principles contained in the Code, § 3129 (now Civil Code, § 3988), to the allegations in the bill, it was apparent that there was no equity in it; "that if any harm [had] come to defendant it was by his own negligence and laches. 'Vigilantibus non dormientibus jura subveniunt,' which is a maxim of our law taken from the ancients. 'He that asks help from the gods must first help himself.' (Æsop.)" Again, in *Phillips* v. *Taber*, 83 *Ga.* 565 (4), it was held that to set aside a judgment for defendant's absence from providential cause, he must show, not only that he was absent from such cause, but unable to notify the court of his condition.

Whatever may be the correct rule as to when equity will grant relief against a judgment at law rendered in the absence of the defendant, by reason of his serious illness (and there seems to be some diversity of judicial opinion on the subject,— 1 Black on Judgments, § 334 et seq.), it appears from the petition in the case under consideration that, even if the petitioner had been present when the verdict and judgment which he seeks to set aside were rendered against him, the result would not have been different. His counsel had been duly notified to produce a certain letter, alleged to contain evidence pertinent to the issue and to be used on the trial in that case as evidence for the plaintiff. It appeared that, when called upon to produce this letter, the counsel representing the petitioner admitted that it was in his possession, but stated that he was unable to produce it, because it had been carried to Moultrie by his former partner. It does not appear that any request was made that the case be postponed until the letter could be procured, or that any objection was made to the production of the letter because it was not material evidence, or for any other reason, nor does it appear that any objection was made to the granting of the peremptory order, requiring petitioner's counsel in that case to produce the letter; nor is there any suggestion in the petition as to what petitioner could or would have done, had he been present, to prevent the granting of the peremptory

order to produce this letter, or to prevent the rendition of the judgment against him and his sureties, for the failure of his counsel to comply with such order.    It has been held that, "To authorize the setting aside of a verdict on account of the defendant having been providentially prevented from being present at the trial, it must be shown that he was injured by such absence." *Peacock* v. *Usry*, 52 *Ga.* 351 (3); and that when it did not appear in a motion for a new trial that a different result would have been reached had the movant been present at the trial, the motion was properly overruled.    *Ferrill* v. *Marks*, 76 *Ga.* 21.

2. From the petition and the exhibits attached .thereto, it appeared that J. H. McCall·had obtained a judgment against Ashurst for $405, principal, and that Brice, the garnishee, had answered that he had in his hands the sum of $461.27, which Miller had claimed and obtained by giving bond to dissolve the garnishment.   The judgment rendered against Miller and his sureties was for $405, principal, and interest on the same at seven per cent. per annum from the date he dissolved the garnishment and took the fund to the date of the judgment against him and his sureties. The issue in the case was whether the garnishee owed Ashurst or Miller, and the question as to whether Miller had damaged McCall by purchasing from Ashurst, McCall's agent, an order for a monument, which Brice, the garnishee, had given the agent, was not in the case.   It is clear, therefore, that there was no merit in the ground of the petition which alleged that the amount for which the judgment sought to be set aside was rendered exceeded the amount which the plaintiff was entitled to recover.   The judgment of the court, overruling the demurrer, must be

*Reversed.    All the Justices concur.*