### WILLIS *v.* FIELDS.

1. "A contract which must, under the statute of frauds, be in writing, and which accordingly is put in writing and duly executed, can not be subsequently modified by a parol agreement."
2. Where a written contract of the character indicated in the preceding note was signed by a surety for one of the contracting parties, he was not released from liability by reason of the making of a subsequent parol contract between the principals, which did not become binding by complete performance or otherwise.

Argued April 7, 1908.—Decided February 27, 1909.

Complaint. Before Judge Worrill. Mitchell superior court. October 23, 1907.

Fields brought an action against Cox and Willis for an alleged breach of a written contract, a copy of which was attached to the petition. This contract, the subject-matter of which was the sale by Cox and the purchase by Fields of certain described cattle which Cox was to deliver to Fields in the future, is fully set forth in 123 *Ga.* 272-274, the case being then before this court upon a writ of error sued out by Fields, complaining of the dismissal of the petition, at the appearance term, upon a demurrer thereto filed by Willis. The contract was signed by Fields and Cox as principals, and, as this court held when the case was here before, it was signed by Willis as surety. It contained the following stipulations: "That said party of the first part [Fields] agrees . . to purchase from said party of the second part [Cox] the following described cattle, to wit: 150 two-year old steers at $6.50 per head; 150 one-year old steers at $5.50 per head: 150 two-year old heifers at $6.50 per head; 150 one-year old heifers at $5.50 per head. And all of said cattle to be good, straight, smooth, merchantable, and to be of full age. . . Said cattle are to be branded thus: S-F on left hip. Bulls are not to exceed 25% in this contract, and known as the S stock, and ranging in Mitchell, Decatur, and Gadsden counties, State of Ga. and Fla.; said cattle to be passed upon and graded in Bainbridge, Camilla, and Faceville, State of Ga., and there counted. . . Said cattle are to be delivered on or before the 1st day of June, 1898, free on board cars as above agreed, and to be paid for at time of delivery. In order to secure and guarantee to party of second part, and to make the contract more secure and binding on both parties, the party of the first part agrees to pay and advance as part payment the sum of $600.00, the receipt of which is hereby acknowledged, which said sum of money, or any other sums of money so advanced or may hereafter be advanced, is part payment on said cattle." The "parties further agree that damages in this matter, being uncertain and not capable of being understood or ascertained by any satisfactory or known rule, the uncertainty being in the nature of the subject itself and the particular circumstances of the transaction, has been the subject of actual and fair calculation and adjustment between the parties; it is therefore agreed upon by all parties hereto that the sum of one dollar per head shall be the fixed, liquidated, stipulated, and stated damages herein, and settled

upon by the parties hereunto, and said sum to be paid by the parties hereto in default to the other, upon failure of the party in default to comply with this agreement in whole or in part."

Cox filed no defense to the suit. Willis pleaded a discharge as surety, in consequence of a subsequent parol agreement between Fields and Cox, which he alleged was entered into without his consent. Upon the trial under review the court directed a verdict for the plaintiff against the defendants for the sum of $327 principal, and interest at seven per cent. from the first of June, 1898, the date on or before which the contract required the cattle to be delivered; to which direction Willis excepted.

It appeared from the evidence that on the 28th of May, 1898, Cox had delivered to Fields 273 head of cattle, leaving 327 of the 600 head still to be delivered, and that on that day Cox gave to Fields his due-bill for $308, the difference between the advances Fields had made to Cox for cattle and the value of the cattle, at the stipulated prices, that had been delivered by Cox to Fields up to that time. The substance of Cox's testimony was: He then desired to deliver to Fields the balance of the cattle according to the contract, and it was possible for him to do so within the time therein stipulated; that it was greatly to his advantage to carry out the contract, and he desired Fields, who lived in Texas, but was then in Georgia, to wait until June the first and receive the balance of the cattle, but Fields desired to return to Texas at once, claiming that he could not remain in Georgia. They thereupon entered into a parol agreement whereby Cox was to deliver to Fields 100 head of cattle, one half of which number were to be two years old and the others one year old, at the same prices, respectively, as those stipulated in the original contract; and this agreement was to take the place of the original one. Willis was not present when this parol agreement was entered into. Willis also testified that he was not present when this parol agreement was made, and that he had no knowledge of it and never agreed to it. In reference to this alleged parol agreement between Fields and Cox, Jones, a witness introduced by the plaintiff, testified: "Mr. Fields seemed very much upset about not getting the cattle, but after while they agreed in some way that Mr. Cox was to furnish 100 yearlings some time in June, and I was to receive them as Mr. Fields' agent. I don't know how many more cattle Cox was due Fields at that

time. I never heard anything said about any new cattle or different cattle. He was just to deliver 100 head of yearlings some time in June, and I was to receive them. It seemed that Mr. Cox had got $308 more than Mr. Fields had received cattle for. . . The understanding that we all left with was that Cox was to deliver 100 more yearlings, one-year old and two-year old heifers, 50 one-year olds and 50 two-year olds—I am not positive as to that, but if they were not to be heifers, they were not to be over 25 per cent. bulls—were to be generally heifers." Fields testified: "J. M. Cox only delivered to me 273 head of cattle. . . When I went to receive the 273 head of cattle, they were not even collected. I rode with Mr. Cox two or three days helping him to collect them. I was always ready and willing to carry out my part of the contract. I never at any time agreed with J. M. Cox, or any one else, to cancel, set aside, or annul the contract. I always insisted on standing to it. I never at any time made an agreement with said Cox, or any one else, to take the place of the original contract. . . But at the request of both Cox and . . Willis I did agree with them, on the 26th day of May, . . 1898, that I would accept 100 yearlings on the original contract if they were delivered by the 15th day of June, 1898, but they did not deliver them. . . Cox did deliver to me 273 head of cattle. They were delivered at four different places, at Camilla on May 27th, at Pelham on May 27th, at Whigham May 28th, and at Climax on May 28th, 1898. I advanced Cox $600 when the contract was entered into."

*Russell & Hawes,* for plaintiff in error. *Pope & Bennet,* contra.

FISH, C. J. (After stating the facts.) The original contract, being for the sale of cattle to the amount of more than fifty dollars, to be binding, was required by the statute of frauds to be in writing. Civil Code, §2693 (7). It was in writing. In *Augusta Southern Railroad Co.* v. *Smith,* 106 Ga. 864 (33 S. E. 28), it was held: "A contract which must, under the statute of frauds, be in writing, and which, accordingly, is put in writing and duly executed, can not be subquently modified by a parol agreement." Under this ruling, it would seem to inevitably follow, in the present case, that the parol agreement between Fields and Cox, made after the execution of the original contract, even taking Cox's version of it to be true, was not binding on Fields, and, therefore, would not operate to discharge Willis, who was surety for Cox

on the original contract. Under the statute of frauds a parol contract for the sale of goods, wares, and merchandise, to the amount of fifty dollars or more, is binding if the buyer shall accept part of the goods sold and actually receive the same, or give something in earnest to bind the bargain, or in part payment. Code section above cited. Fields, at the time of the execution of the contract, paid $600 to Cox as part payment for the cattle, and subsequently accepted from Cox part of the cattle sold and actually received the same. Do these facts take the case out of the ruling made in *Augusta Southern Railroad Co.* v. *Smith,* supra, and permit the original contract to be modified by the subsequent parol agreement relied on by Willis, for his discharge as surety? To so rule would be to hold that a contract for the sale of goods, required by the statute of frauds to be in writing, and which was put in writing, would, by reason of the buyer merely complying with his obligation under the terms of the contract to pay in advance part of the purchase-price and to accept and receive part of the goods, put such written contract in the same category as parol contracts and written contracts not within the statute of frauds, thereby subjecting it to modification by a subsequent parol agreement, and changing its character in a material particular, and, perhaps, against the buyer's interest, simply because he did what he had stipulated to do in the original written contract. In our opinion, the original contract was not modified by the subsequent parol agreement, and therefore the court did not err in directing the verdict. This view of the case renders it unnecessary to pass upon the other questions made by the record.

*Judgment affirmed. All the Justices concur.*