### 7642.   MEINHARD-FERST-DOYLE COMPANY *v.* DeLOACH.

1. In the absence of any contract whereby factors were bound to hold cotton as instructed by the customer, they were not bound so to hold it, where the customer failed to deposit the margins necessary to hold it after he had been notified to do so.

2. Under no view of the evidence in this case was the defendant entitled to prevail; but the evidence, together with the admissions in the defendant's plea, demanded a verdict in favor of the plaintiff for the full amount sued for. The plaintiff's motion for a new trial should, therefore, have been sustained.

DECIDED FEBRUARY 16, 1917.

Complaint; from city court of Reidsville—Judge Collins.   June 20, 1916.

*H. C. Beasley,* for plaintiff.   *Way & Burkhalter,* for defendant.

LUKE, J.   The amended petition makes substantially the following case: / The plaintiff, a corporation, is a "commission merchant or factor."   On December 20, 1912, the defendant shipped to the plaintiff five bales of cotton, to be sold by the plaintiff for the account of the defendant, at the same time drawing upon the plaintiff for $437, which the plaintiff paid.   The cotton was sold during the months of August, September, and October, 1913, and the net proceeds were credited to the defendant's account, leaving a balance of $108.03 due by the defendant to the plaintiff.   All the usual and necessary details as to dates, weights, selling prices, etc., appear in the bill of particulars annexed to the petition.   The defendant's answer admits that "the said plaintiff would be entitled to a judgment for the same unless this defendant shows to the court that he had fully paid off and discharged the said indebtedness."   The defendant's plea of satisfaction makes substantially the following defense: that at the time the cotton was shipped to the plaintiff it was of a grade "next to fancy," weighed 2,180 pounds, and was then worth on the market 23 cents per pound (a total of $731.40), "and remained of such value until the said cotton was sold by the plaintiff;" that at first the defendant directed the plaintiff to hold the cotton for 60 days, and "later" directed the plaintiff to "sell to best advantage," and "give him credit for the proceeds of same;" that, instead of selling the cotton as directed, the plaintiff held it "for a long period of time, and finally claimed to have sold it at a price which was far below the market price, . . to the injury of this defendant, and without his consent;" that but for the plaintiff's said conduct the cotton would have brought $479.60 net to the defendant, after allowing for all proper expenses, etc., instead of only $360.52, as was actually realized under the plaintiff's plan; and that, by reason of the plaintiff's said conduct and failure to exercise ordinary care, prudence, and skill in the sale of cotton, the defendant had been damaged in the sum of $119.08; being the difference between the price the cotton should have brought and the price it did bring.   The defendant prayed judgment against the plaintiff "for such an amount as he may be able to show to the court he is entitled to re-

cover in said case." The jury returned a verdict in favor of the defendant for $6.74; the court overruled the plaintiff's motion for a new trial, and thereupon the plaintiff sued out a writ of error to this court.

In the brief for the plaintiff in error before this court, only one ground of the motion for a new trial is insisted upon; namely, that the verdict is without any evidence to support it. An examination of the brief of evidence shows that this complaint of the plaintiff in error is well founded. The defendant took the stand as a witness in his own behalf for the purpose of establishing his affirmative plea, and the first positive and emphatic testimony given by him appears in the record here in the following language: "I can not say that these defendants [plaintiff] could have sold my cotton any time from the time I shipped it until the time it was sold for more money than it was sold for. I would not swear that they did not act in the utmost good faith. I would not swear that they did not deal with me honestly and fairly. So far as I know, I have been treated exactly right and got the best prices obtainable for my cotton." The remainder of the defendant's testimony is either vague, indefinite, and conjectural, or self-contradictory. He admits, without explanation, the following correspondence between himself and the plaintiff respecting the matter in controversy: (Defendant's letter of December 19, 1912, to plaintiff) "I am shipping you 5 b/c. It is good. Was offered 22 cents per pound for it yesterday, but not ready to sell it yet. I am drawing on you for 20c per pound, and ask you to hold about 60 days for me. Kindly honor draft." (Plaintiff's letter of December 20, 1912, to defendant) "We are in receipt of your letter of the 19th instant advising shipment of 5 bales of sea-island cotton, with draft against same for 20 cents per pound. This draft will be paid on presentation. We note that we are to hold this shipment for 60 days. You, no doubt, realize that the market for sea-island cotton is at present very easy, but we trust a demand will develop by the time you are ready to make sale." (Plaintiff's letter of January 20, 1913, to defendant) "We have been called on by the banks for more margin against our loans on sea-island cotton, and we find that it will be necessary to in turn call on the owners of the cotton. Your account shows a debit of $437, without interest, against 5 bales of sea-islands. As the

banks have reduced loans on sea-islands to $70 per bale, we will have to ask that you arrange to furnish margins amounting to $100. We fear that the above conditions will result in a quantity of distress cotton being forced upon the market. We trust that it will not be necessary for us to resort to these measure with your cotton. Kindly let us hear from you, with check for this amount." (Plaintiff's letter of January 27, 1913, to defendant) "We have no reply to our letter of the 20th inst., asking that you remit us $100 as margin against your 5 bales of sea-island cotton. As stated in our previous letter, we do not wish to force the sale of any sea-island cotton, thereby breaking the market, and we must therefore ask that you comply without request by return mail." (Plaintiff's letter of April 30, 1913, to defendant) "Referring to our several letters in regard to margining your sea-island cotton, we consider that we are entitled to the courtesy of a reply to our letters. We advanced more than the cotton will bring, and, as the account will not pay out, you are honestly due us any debit remaining after the cotton is disposed of. If you are not in position to furnish the $100 asked for, kindly let us hear from you, indicating a willingness to pay the overdraft when the cotton is disposed of and the account adjudged, or let us have a note for the amount. You are, no doubt, aware that the situation has been slightly brighter of late. There has been a pretty good demand for the lowest grades, and some inquiry for the best grades, but still at what looks like distress prices; so that we have as yet made no sales. Kindly let us hear from you." (Defendant's letter of May 1, 1913, to plaintiff) "In reply to the cotton, will say that I mean to treat you fair. I can't do anything but sell the cotton as soon as you can and let me hear from it. Guess, if you treat me right, will ship you more to cover my bills." (Plaintiff's letter of June 16, 1913, to defendant) "We herewith enclose statement of your account to date, showing debit of $450 against 5 bales of sea-island cotton. We have been doing everything in our power to avoid making sacrifice of any of our cotton and to uphold the market. The banks, however, are now requiring very full margin in sea-islands, and we are forced to ask the owners of the cotton to remit cash or give us margin notes to meet these demands, which we can in turn use with the banks. We accordingly herewith enclose a note for $150 for this purpose. Kindly sign the same and return at once.

We will then be in a position to protect your cotton from a sacrifice sale. We are inclined to do everything we can to make the adjustment of this account for you, and we feel sure that you will meet us by showing a disposition to do what you can. We have no intention of forcing the payment of the above note under these conditions." (Plaintiff's letter of September 29, 1913, to defendant) "We herewith enclose account sale, covering the sale of two bales of sea-island cotton and statement of your account to date. You will note that this statement shows a debit of $183.88, with one bale of sea-island still on hand. You must realize that we have done everything in our power to get you out on this cotton, and in fact we made sales on an average of about 2½ cents per pound above what similar cotton was sold at during the 'distress period' in the spring. We therefore consider that we are entitled to an adjustment of this account at once, and we would ask that you forward a check for the above amount, less $50 against the bale on hand, or a shipment to cover. Kindly let us hear from you."

The defendant shows no communication from himself to the plaintiff, except the two letters dated December 19, 1912, and May 1, 1913, respectively, which are set out above. He does not claim to have kept up his margins as requested, or to have made any response to the several letters from the plaintiff requesting him to do so. He admits receiving from the plaintiff the letters directed to him, above set out, and then testifies: "The reason why I did not raise any objection to the price at which the cotton was sold when I received the notices of sale, I just neglected it." It is needless here to set out the rest of the defendant's testimony. It is needless to set out that of another witness introduced by him. The other testimony can avail the defendant nothing. By his own solemn admissions in judicio, which have already been set out and which disprove his plea, he was precluded from establishing the defense which he attempted to set up. Where any party—plaintiff, defendant, claimant, or what not—takes the stand as a witness in his own behalf, and delivers testimony which is self-contradictory on the most material issue in the case,—the very heart of it,— that version of his testimony must be adopted which is most favorable to his adversary; and such a party will not be permitted to overcome his own adverse testimony merely by offering wit-

nesses who swear differently. *Steele* v. *Central Ry. Co.,* 123 *Ga.* 237 (51 S. E. 438); *Tuten* v. *A. C. L. R. Co.,* 4 *Ga. App.* 353 (61 S. E. 511); *Johnson* v. *Southern Ry. Co.,* 9 *Ga. App.* 661 (72 S. E. 66).

This rule of construction is not, however, the defendant's sole trouble in this case, though, as plainly seen, it is an all-sufficient trouble. But if his damaging admissions were removed from the record, the verdict would still be without sufficient evidence to support it. Taking all the evidence in the record, except that part of the defendant's testimony dealt with above, the case would then be controlled by the decision of this court in *Leffler* v. *Pearson,* 17 *Ga. App.* 57 (86 S. E. 256), and the authorities cited in the first and second divisions of that decision. In the case at bar the defendant not only fails to show any instruction to the factor to hold the cotton, but also fails to show any contract whereby the factor would have been bound by such instructions if given; while the uncontradicted evidence does show that the defendant failed, after due notice given, to deposit the margins necessary to hold it. He was not, therefore, under any view of the evidence, entitled to prevail or to have any deduction from the amount of the plaintiff's claim.

The judgment denying the plaintiff's motion for a new trial must therefore be

*Reversed.  Wade, C. J., and George, J., concur.*