13841.   SHERMAN *et al.,* executors, *v.* STEPHENS.

1. The court did not abuse its discretion in setting aside the default judgment and in allowing the defendant to plead, upon the showing made.

2. In a suit by the executors of a deceased payee of a joint and several note signed by three persons, one of whom only is sued, another of the signers was competent to testify in favor of the defendant that the witness was the principal and that the person sued was only a surety and had been discharged by reason of transactions between the witness and the deceased payee. The testimony could not in any view or event be in favor of the witness so as to disqualify him under the evidence act of 1889 (Civil Code of 1910, § 5858).

3. Although a secret agreement between the principal and the payee, that

in consideration of services to be performed by the former for the latter at a stipulated price, the payee will extend the maturity of the note for a definite period, would not be enforceable under the statute of frauds where the services (not as an overseer) are not to be performed within one year from the making thereof, and would therefore, without more, afford no reason for releasing a surety from liability upon the note, the rule would be different if performance of the services has been fully executed · and if the note was in fact extended as was contemplated by the agreement of the parties.

4. While it is true that " when a witness testifies to facts incoherently or inconsistently, that circumstance goes to his credit, and if his testimony be very incoherent or inconsistent, it should be considered with great caution " · by the jury (*Evans* v. *Lipscomb*, 31 *Ga.* 71 (2) ), this court is not authorized to hold as a matter of law that testimony of one not a party has no probative value merely because it is self-contradictory; nor was the evidence admitted on behalf of the alleged surety, in support of his plea that he was discharged by reason of a secret agreement between the principal and the payee to extend the maturity of the note, so indefinite or uncertain as to preclude an instruction by the court submitting to the jury the issue raised by the plea.

5. A ground of a motion for a new trial must be complete in itself; and when a particular ground is under consideration, reference to other grounds should not be required in order to understand the assignment of error. *Bowen* v. *Smith-Hall Grocery Co.*, 146 *Ga.* 157 (4) (91 S. E. 32) ; *City of Jackson* v. *Wilson*, 146 *Ga.* 250 (4) (91 S. E. 63) ; *May* v. *Srochi*, 23 *Ga. App.* 33 (7) (97 S. E. 277).

6. " A correct statement of the law applicable to the case is not erroneous because the court failed 'in the same connection to give to the jury other and further instructions. *Hill* v. *State*, 18 *Ga. App.* 259 (89 S. E. 351), and cases there cited." *Killian* v. *State*, 19 *Ga. App.* 750 (2) (92 S. E. 227).

7. While the " failure to record a contemporaneous mortgage given to secure an indebtedness evidenced by a promissory note, for the payment of which one is surety, discharges the surety " (*Cloud* v. *Scarborough*, 3 *Ga. App.* 7 (3), 59 S. E. 202; *Toomer* · v. *Dickerson*, 37 *Ga.* 428 (1) ; *Atlanta National Bank* v. *Douglass*, 51 *Ga.* 206, 21 Am. R. 234; *Nance* v. *Winship Machine Co.*, 94 *Ga.* 649 (4), 21 S. E. 901; *Phillips* v. *Bridges*, 144 *Ga.* 703, 87 S. E. 1059), a release would not result from such failure to record where the mortgage, though tendered by the principal simultaneously with the note, is rejected, and the credit is extended solely upon the note. The payee of the note, never having accepted the mortgage, assumed no duty in regard to its record.

8. " The release of or compounding with one surety discharges a cosurety; but an attempt to release one of the sureties does not have this effect where the attempted release is unenforceable for lack of consideration." *Williams-Thompson Co.* v. *Williams*, 10 *Ga. App.* 251 (3) (73 S. E. 409) ; *Pearce* v. *Swift*, 21 *Ga. App.* 622 (2) (94 S. E. 916).

9. A surety, asserting his own discharge by reason of the release by the payee of an alleged cosurety, has the burden of proving such defense, including the fact of consideration. *Duckett* v. *Martin*, 23 *Ga. App.*

630 (2) (99 S. E. 151). Such a defense is not sustained where the evidence tends only to show that, because of some unfulfilled condition, the surety with whom it is alleged the payee compounded never in fact became bound. There was no evidence in the case at bar sustaining the plea of the defendant that he had been discharged by reason of the release of a cosurety by the payee.

10. "Where instructions are given that are not warranted by the evidence and are calculated to mislead and confuse the jury, the error requires a new trial." *Central Georgia Power Co.* v. *Cornwell*, 139 *Ga.* 1 (2) (76 S. E. 387, Ann. Cas. 1914A, 880); *Bird* v. *Benton*, 127 *Ga.* 371 (4) (56 S. E. 450); *Culberson* v. *Alabama Construction Co.*, 127 *Ga.* 599 (56 S. E. 765, 9 L. R. A. (N. S.) 411, 9 Ann. Cas. 507). Applying this principle, the court erred in giving the charges complained of in grounds 8 and 9 of the motion for a new trial, and the error was such as to require a reversal. *Nation* v. *Jones*, 3 *Ga. App.* 83 (3) (59 S. E. 330).

11. There was some evidence in support of the verdict, and a new trial is ordered only for the error referred to in the preceding headnote.

DECIDED JUNE 27, 1923.

Complaint; from city court of Blakely — Judge Gray. July 19, 1922.

J. S. Sherman and H. E. Hightower, as executors of E. Hilton, filed suit in the city court of Blakely, returnable to the August term, 1921, against J. A. Stephens, upon a promissory note, payable to Hilton, dated May 1, 1912, maturing May 1, 1913. While the note appears to have been signed by J. C. McCullers, J. A. Stephens, and Eugene Martin, it was a joint and several paper and Stephens only was sued. The deputy sheriff made an entry of having served the defendant personally on July 29. On August 15 a default judgment was entered against the defendant for the principal, interest, and attorney's fees sued for. On September 16, during the same term, the defendant filed a motion to vacate the judgment, along with a traverse of the entry of service. The sheriff, his deputy, and the plaintiff were made parties, and a rule nisi was granted by the presiding judge requiring the plaintiff to show cause at the next November term why the motion should not be granted. In the meantime the entry of service was amended by the officer so as to show that instead of the service being personal, as originally stated, it was by leaving a copy of the petition and process at the defendant's " residence and most notorious place of abode."

At the time set for the hearing both the plaintiff and the officer responded. Their responses related solely to the question of service, although it is averred by the plaintiff " that the defendant,

on or about the 30th day of July, 1921, actually got said copy and at once employed legal counsel to represent him in defending said suit; and that there was no valid reason or excuse for the defendant failing to file such answer to said suit as he may have desired to interpose, on or before the return day of said case, to wit, the third Monday in August, 1921, the date on which judgment was duly rendered against him by default." This document was not sworn to. Though no order of continuance appears in the record, the motion was not heard until the January term, 1922. At this term, before any action had been taken by the court upon the original motion, the defendant by leave of the court amended by alleging substantially the following: that movant resides 18 miles from the court-house at Blakely, Georgia; that on July 28, 1921, the defendant was taken seriously ill while absent from home and at once returned to his house, becoming much worse, and that he was forced to be confined to his bed with throat and lung trouble for nearly three weeks, suffering severe pains during that time and being unable to leave his home to transact any business whatsoever; that some time after being confined to his bed a copy of the suit was brought to him, which he at once had forwarded to Walter G. Park at Blakely, Georgia; that as soon as he was able to leave the house he went to Blakely " in order to arrange with his attorney to file the defense in the said suit;" that on arriving at Blakely he discovered that the judgment had been rendered against him the day previous; " that up to that time he had been unable to see an attorney or to make any arrangements with him to file his defense to said suit;" that he has been as diligent " as it was possible for him to be, afflicted as he has been with sickness as above set out." Attached was a copy of his defense, which upon its face was meritorious; and it was prayed again that the judgment be set aside and that he be allowed to file the defense, and be " given his day in court." The original motion and the amendment were each sworn to positively by the defendant.

Upon the hearing in open court, January 16, 1922, a judgment was passed by the presiding judge, overruling the motion upon the original grounds, but sustaining it upon the grounds added by the amendment, and vacating the default judgment as prayed. It is recited in the order that the defendant conceded that service had

been made as shown in the amended return. It appears that the hearing was had upon the verified motion to vacate as presented, without the submission of any additional evidence by either of the parties. The amendment to the motion had been allowed over objection of the plaintiff that no meritorious ground or legally sufficient reason was shown for setting aside the judgment, and the motion was granted over objections to the same general effect. The action of the court in overruling these several objections of the plaintiff and in setting aside the judgment was excepted to pendente lite. In addition to assigning error upon the overruling of the several objections, it was urged further in the exceptions that the granting of the motion was "erroneous and contrary to law, the defendant having failed to show any lawful excuse for failing to in any way inform the court that he would be unable to interpose his defenses to said action, prior to the time said original judgment was rendered against him on the 15th day of August, 1921."

At a subsequent term the case came on for a trial upon the issues as made by the defenses thus allowed to be filed. It was set up that the defendant was only a surety, and the plea with amendments alleged in substance the following defenses: (1) That on or about the date of the maturity of the note, the payee, without the knowledge or consent of the defendant, extended the time of maturity for the period of one year, upon the agreement of the principal, J. C. McCullers, who was at the time in the employment of the payee, to continue to work for him for the sum of $50 per month, although his services were of the value of $75 per month. (2) That the note originally was secured by a deed to certain real estate, the property of the principal, and that the executors of the payee "released their lien, or security deed, which they held on said land, . . thereby increasing the risk of the surety on said note, and without the consent of the said surety." (3) That also a mortgage to personalty was given as security for the note, simultaneously therewith, and "that this mortgage was afterwards, without the consent of the defendant, turned over and surrendered to the said J. C. McCullers, thereby increasing the risk of this defendant." (4) "That the payee and holder of said mortgage failed to have the same properly recorded, and that said failure to record said mortgage released

33

the defendant who was surety to the note sued on." (5) That another person, "one Eugene Martin, signed the note sued on as cosurety with defendant, and that the payee, E. Hilton, did for a consideration release the said Martin from the payment of said note at the request of the said Martin on the — day of — 1916; which was done without the knowledge and consent of this defendant, and the release of said cosurety without the knowledge or consent of defendant released this defendant as surety on said note." (6) "That defendant signed the note sued on with the understanding with the principal, J. C. McCullers, and Eugene Martin, the cosurety, that one Dr. Middleton was to also sign said note as a cosurety with defendant and Eugene Martin, and that the payee E. Hilton likewise so understood, but that the said Dr. Middleton did not sign said note, and for this reason this defendant is not liable on said note." There was no demurrer to the plea.

The trial resulted in a verdict for the defendant, and, the motion of the plaintiffs for a new trial being overruled, they excepted.

*Glessner & Collins,* for plaintiffs.

*P. D. Rich, Walter Park,* for defendant.

BELL, J. (After stating the foregoing facts.)

1. It is contended in the brief of the attorneys for the plaintiff in error that the original motion to vacate did not contain enough to amend by, but no such objection appears in the record, nor was it urged that the grounds of the amendment were not presented in time, unless the attack upon the granting of the motion is inclusive of the question of time. It seems that the verified motion was, without objection, assumed on the hearing to be true. Only the one proposition is, therefore, presented: Does the motion as amended show any legally sufficient reason or meritorious ground for vacating the judgment? The correctness or incorrectness of the allowance of the amendment and also of the granting of the motion will be settled by an answer to this single question.

Section 9 of the act of August 21, 1906 (Ga. L. 1906, p. 161), provides as follows: "That where a petition shall have been filed as much as twenty days and service perfected as much as fifteen days prior to any regular or quarterly term of the court,

and the defendant shall fail, on or before the first day of such term, to file any answer or plea, or any other sufficient defense, the court shall grant judgment immediately, without intervention of a jury, in favor of the plaintiff; but in the discretion of the court such default judgment may be opened during the same term and the defendant allowed to plead." It is provided in section 19 " That the general laws of this State in regard to the commencement of suits in the superior courts, defenses, set-offs, affidavits of illegality, arbitration, examination of parties to suits or witnesses by interrogatories or under subpœna, witnesses and their attendance, continuance or any other matters of judicial nature within the jurisdiction of said city court shall be applicable to said city court."

Whatever power the judge of the city court of Blakely may exercise in regard to a matter of this sort is derived from the act establishing the court (*Daniel* v. *Nixon*, 21 *Ga. App.* 206, 13 S. E. 1013; *Florida Central R. Co.* v. *Luke,* 11 *Ga. App.* 290, 75 S. E. 270) ; but the discretion which is granted by the above-quoted provisions is to be exercised upon general legal principles. The judge, under the power so given, can not " act arbitrarily," but must " exercise a sound and legal discretion." *Brucker* v. *O'Connor,* 115 *Ga.* 95 (41 S. E. 245). Before the opening of a default judgment can be ordered, " the movant must allege and prove some good· reason in law why he had failed to make his defense at the time required by the act." *Florida Central R. Co.* v. *Luke,* supra.

While it is not so expressly declared in the act, we think that the authority which the above-quoted provisions confer upon the judge of the city court of Blakely is not narrower or more limited than that which is conferred by section 5656 of the Civil Code upon the judges of the superior courts in regard to the opening of defaults at the trial term, and that the decisions in reference to the extent of the discretionary powers conferred in this section may be applicable to this case. We speak, however, only of analogy; and although it has been held that this section provides only for the opening of defaults or default entries, and not for the vacation of final judgments (*Adams* v. *Overland-Madison Co.,* 27 *Ga. App.* 531 (2), 109 S. E. 413), the analogy yet obtains, for the reason that the authority given to the judge by the act in

question extends to default judgments and not merely to entries.

It was held in *Phillips* v. *Taber,* 83 *Ga.* 565 (4) (10 S. E. 270), that to set aside a judgment for the absence of the defendant from providential cause, he must show, among other things, not only that he was absent for such cause, but that he was unable to notify the court of his condition; but the motion in that case was to set aside a judgment which had been entered upon a verdict by a jury. Also, the subsequent decisions applying this rule (*Johnson* v. *Driver,* 108 *Ga.* 595, 34 S. E. 158; *Glover* v. *Dimmock,* 119 *Ga.* 696, 46 S. E. 824; *McCall* v. *Miller,* 120 *Ga.* 262, 47 S. E. 920; *Ayer* v. *James,* 120 *Ga.* 578 (2), 48 S. E. 154; *Sims* v. *Sims,* 135 *Ga.* 439 (2), 69 S. E. 545; *Bryant* v. *Elberton & Eastern Railway Co.,* 20 *Ga. App.* 586, 93 S. E. 219), were each upon a proceeding independently instituted or a motion to vacate after verdict, and not at a time or stage of the controversy when the discretion of the judge could be invoked; certainly not when his discretion, if existing at all, was as plenary and broad as in the case of opening a default. We do not think that the cases just referred to are applicable here, for the reason that the motion or petition in each of them came at a time when, in order to maintain it, it was incumbent upon the movant or petitioner to establish an absolute right to the grant of the relief either in equity or at law; and the motion or petition was not addressed to the discretionary power of the court. See, in this connection, *Howell* v. *Ware,* 133 *Ga.* 674 (66 S. E. 884); *Robinson* v. *Carmichael,* 134 *Ga.* 654 (68 S. E. 582).

"Until the end of the term at which rendered, judgments are 'in the breast of the court,' and may be set aside or modified at the judge's discretion." *Georgia Ry. &c. Co.* v. *Hamer,* 1 *Ga. App.* 673 (58 S. E. 54). It was further said in that case: A " verdict is not 'within the breast of the court' in the sense that the judgment is." As to the case at bar, it is expressly provided that the judge may in his discretion set aside a default judgment at any time during the term. Although the hearing and the granting of the motion occurred at a subsequent term, we are of the opinion that the filing of the motion with the order nisi thereon assigning the matter for a hearing reserved in the court, until the motion was finally disposed of, the authority which it had at the time it assumed jurisdiction of the proceeding. This was during

the term of the judgment sought to be vacated. " Generally where proceedings to amend, open, or vacate a judgment or decree are commenced during the term at which it was rendered, the jurisdiction of the court over it for this purpose may be continued for a subsequent term, and the relief sought be granted at such term. 17 Am. & Eng. Enc. L. 815." *Van Dyke* v. *Van Dyke,* 120 *Ga.* 984 (1), 987 (48 S. E. 380).

The sole question for decision is whether upon the facts as presented in the amendment to the motion, was there an abuse of discretion in the granting of the motion. We would that we might deduce from the numerous cases some fixed rule by which to determine questions of this character, but the task is legally impossible, for it has been said, " A motion to set aside and vacate a judgment and reinstate a case cannot be determined by any fixed rule, but depends upon the circumstances of the case." *Storey* v. *Weaver,* 66 *Ga.* 296 (1) ; *Clark* v. *Ramsey,* 138 *Ga.* 726, 728 (75 S. E. 1128). The same may be also said of a motion to vacate a default judgment. But we will venture the following observations: Before any decision can be followed as a precedent, it must be noticed at what stage of the controversy the motion or petition to vacate was made, and whether the proceeding was addressed to judicial discretion or one that depended upon the establishment of a right. There is the broadest distinction between the two. Again, within the class of decisions where the motions were addressed to judicial discretion, we may see on the one side where a motion was denied upon a seemingly strong showing, while remotely upon the other the motion was granted for a slight, though reasonable and meritorious, cause. The wide divergence apparently existing in the authorities is not the result or the evidence of a confusion of the law, but indicates merely the breadth of the field of the discretionary power which is vested in the judges in matters of this kind. A decision affirming a refusal of such a motion may illustrate only how far a court may go, without error, in denial of it; and another affirming the grant of it, may show merely how liberally the discretion may be exercised without violating the rule that some meritorious reason for the relief must be shown. The action of the trial court within the very wide scope of the field referred to would be affirmed,

whether upon a given state of facts it granted or denied the opening of the judgment. It follows that a decision which may be good as a precedent for the affirmance of the refusal of a motion may not be authority for the reversal of the grant of a motion, upon the same or a similar state of facts. Upon examining the authorities with these things in mind, it is easier to determine whether any particular decision may be useful as a precedent, and we also find that the many decisions with their varying facts and results form in the main a consistent and harmonious whole.

The case comes up with the presumption that the judge did not abuse his discretion in passing the order, and this presumption must prevail unless a contrary ruling was demanded as a matter of law. *Brawner* v. *Maddox,* 1 *Ga. App.* 332 (5) (58 S. E. 278). The movant is not to be barred because he may have been guilty of some neglect, provided that neglect is shown "excusable." Civil Code (1910), § 5656. A wilful disregard of the processes of the court would not be countenanced, but where there is a reasonable excuse for a failure to answer, the default judgment may be opened. *Brucker* v. *O'Connor,* supra. Like the rule of *Phillips* v. *Taber,* supra, §§ 4585 and 5965, under each of which any neglect by the movant is fatal, have no application to this kind of case. "A motion to set aside a judgment, made during the term at which it was rendered, is addressed to the sound discretion of the court, and such discretion will not be controlled by a court of review, unless manifestly abused." *Tate* v. *Little,* 141 *Ga.* 799 (82 S. E. 129). "Whether a judgment by default will be set aside or not, is a question addressed to the sound discretion of the court below, and this court will not, as a general rule, interfere, unless such discretion has been grossly abused." *Lambert* v. *Smith,* 57 *Ga.* 25. As was said by this court, speaking through Judge Russell, in *Butler* v. *Strickland-Tillman Hardware Co.,* 15 *Ga. App.* 193 (82 S. E. 815), the authority to open a default is not confined to providential cause or excusable neglect, but "it is expressly provided that a default may be opened 'where the judge, from all the facts, may determine that a proper case has been made for the default to be opened, on terms to be fixed by the court.'" We cannot hold in this case that the judge "grossly" or "manifestly" abused his discretion. In *Brawner* v. *Maddox,* supra, the facts were as follows: "that J. E. Maddox, one of the

members of the firm [defendants], had charge of this particular kind of business; that when he was served, the copies were laid upon his desk, and he fully intended to file proper pleadings by way of defense; that at that time J. E. Maddox was sick, barely able to be at his office or attend to business, and he forgot the papers lying on his desk; that important matters of business called him to New York, and during his absence the papers became misplaced and there was nothing to remind him of them on his return; that defendants attorney was also sick at that time, for which reason defendants failed to file proper demurrer, pleas and answers; that J. J. Maddox, the senior member of the firm was also in bad health and unable to attend to any business." 1 *Ga. App.* 335-6. The opening of the judgment was affirmed. The showing there was not stronger than that of the case at bar. See also *Thompson* v. *Kelsey,* 8 *Ga. App.* 23 (1). While the judge, if he had seen fit to do so, could possibly have required that the movant should measure with the ruling of *Phillips* v. *Taber,* supra, yet without deciding that he might have exacted so much, we are sure that since his order was one of discretion, he was not compelled to apply so rigid a rule.

We cannot say that it appears absolutely in the motion that the movant had employed an attorney upon whom would have rested the duty of appearance, before the rendering of the judgment. His allegation that as soon as he was able he went to Blakely " to arrange with his attorney " to file a defense, in the light of the further allegation that " up to that time he had been unable to see an attorney or to make any arrangements with him about filing his defense," does not demand such a conclusion. " His attorney," in view of all the facts alleged, could have been reasonably interpreted as meaning the attorney who was ultimately engaged, and who occupied the relation at the time of the use of this phrase.

If it should seem that judgments may lose their security if they may be vacated upon a showing such as appears in this record, we have only to remember that presumably their sanctity and security will be duly preserved by just and upright judges, who will exercise their discretion in favor of opening them only when the interests of justice so require.

2. Ground 4 of the motion for a new trial excepts to the overruling of the objections of the plaintiffs to the evidence of J. C.

McCullers in support of the plea of the defendant that McCullers was the principal, and that the defendant was only a surety and had been discharged by reason of certain transactions between the witness and the deceased payee. It was objected that the witness would be incompetent to testify against the executors, the plaintiffs in the suit, the same as if he were a party. The defendant's attorney then announced: "We expect to show that McCullers is not a party to the suit, and to show that he has been discharged in bankruptcy." The court ruled that the question was whether or not McCullers was interested in the result of the suit, and overruled the objection. During the further examination of McCullers he testified that he "had been in bankruptcy," and that he had just been notified by his attorney that he, the attorney, had the discharge in bankruptcy of the witness in his possession. Ground 5 of the motion for a new trial excepts to the overruling of an objection that these facts could not be shown by parol. Under no supposition could the evidence of the witness be in favor of himself, whether he had been discharged in bankruptcy or not. If it were true that he was the principal and the defendant only the surety, the liability of the witness could not be affected by any of the facts disclosed by his evidence. If the signatory parties were all principals, the witness was testifying against his interest instead of in favor of it. While the objection to the parol evidence in reference to the witness's discharge in bankruptcy was abstractly sound (*Harvard* v. *Davis,* 145 *Ga.* 580 (5), 89 S. E. 740; *Williams* v. *First National Bank of Millen,* 21 *Ga. App.* 182, 94 S. E. 73; *McDougald* v. *Chattanooga Medicine Co.,* 10 *Ga. App.* 653 (2), 73 S. E. 1089), the witness was competent independently of his bankruptcy or his discharge. No error, therefore, appears in either of these grounds of the motion. *Hayden* v. *McKnight,* 45 *Ga.* 147; *Freeman* v. *Bigham,* 65 *Ga.* 580 (3); *Flournoy & Epping* v. *Wooten,* 71 *Ga.* 168 (1), (*a*); *Reed* v. *Baldwin,* 102 *Ga.* 80 (29 S. E. 140); *Lyon* v. *Pignatel,* 146 *Ga.* 272 (91 S. E. 53, 2 A. L. R. 1475); *Patterson* v. *Bank of Lenox,* 8 *Ga. App.* 492 (2) (70 S. E. 77); *Massee* v. *Parrott,* 29 *Ga. App.* 109 (2) (114 S. E. 225). See also note in 2 A. L. R. 1477. Counsel for plaintiffs in error question the correctness of the decision in *Reed* v. *Baldwin,* supra, and suggest that we certify the question to the Supreme Court; but we are satisfied with its

soundness and would not feel justified in adopting the suggestion.

3. Ground 6 of the motion for a new trial sets out in full the evidence of McCullers by which it was sought by the defendant to establish his plea of release from liability, on account of the alleged extension of the maturity of the note. The assignment of error in this ground was as follows: " After the witness had testified as above set forth, counsel for the plaintiffs made a motion to exclude the witness's said testimony for the reasons then urged before the court, that his testimony was susceptible of two constructions, his recollection not being clear, (1st) that in the fall of 1912, or before January 1st, he entered into a contract with Hilton to work with him the following year for the sum of $50 per month, and in the fall of 1913 contracted for the year 1914; yet (2d) the matter as to extending the time of payment of the note was mentioned on May 1st, 1913, and he continued to work for the balance of that year. If McCullers agreed to work from January 1st, 1913, to the end of that year, and then, in May, Hilton agreed to extend the time of payment of that note on the agreement of McCullers to continue to work for the rest of 1913, that would be a nude pact, no consideration for it, because if McCullers entered into a binding contract to work for the year 1913, there would be no consideration for his continuing to work during 1913. If McCullers contracted, when the note became due, to work for the year 1914 at $50, then that agreement would be within the statute of frauds, and that sort of an agreement could not be taken out of the statute by performance, in whole or in part. The court overruled said motion to exclude said testimony of the said witness, and movants assign error on said ruling, for all of the reasons urged at the time by their counsel, and especially upon the ground that the testimony of the witness was so confused, indefinite, uncertain, evasive, and self-contradictory as not to show any definite agreement respecting the extension of the time of payment of the note upon any valid consideration, or to authorize the jury to find in favor of the defendant upon his plea that the time for the payment of the note had been extended without his consent by the payee." The assignment that the evidence " was so confused, indefinite, uncertain, evasive and self contradictory " as to be of no probative value cannot be considered, for the reason that the motion does not show that such objections were

urged at the time the testimony was offered or at all during the trial. But the question sought thereby to be raised is properly presented later on in the motion, and will be dealt with there when reached.

If the evidence was susceptible only of the first construction stated in the objection, there is no doubt that it ought to have been excluded, for if the contract had already been made for the performance of the services, agreeing again to the same effect at the time of the maturity of the note would not furnish consideration for the extension. *Davis* v. *Morgan,* 117 *Ga.* 504 (43 S. E. 732, 61 L. R. A. 148, 97 Am. St. R. 171) ; *Harrell* v. *Kutz, 22 Ga. App.* 235 (95 S. E. 717). But the plaintiffs assert that another construction could have been placed upon the evidence, — namely, that " McCullers contracted, when the note became due, to work for the year 1914 at $50 " per month. Taking the plaintiffs' exception as made, and therefore assuming that the testimony authorized this inference, we concur in the suggestion that the agreement would have been subject to the statute of frauds, since the employment of McCullers was not as overseer, and the services were not to be performed within a year from the making of the agreement. Thus far the alleged surety would not have been released, even though having no knowledge of the agreement. But we cannot hold with the contention that " that sort of an agreement could not be taken out of the statute by performance." If the payee actually agreed to extend the maturity of the note for the period of one year in consideration of the promise of McCullers to work for him during the year 1914, at a stipulated wage, and if McCullers completely executed the promise, the transaction would be removed from the operation of the statute, and would furnish a consideration for the agreement to extend, if the extension was actually granted as agreed. McCullers testified positively that he did work for Hilton during the year 1914 at $50 per month, and it appears that no action whatever was taken upon the note for more than twelve months from its original maturity. Such a secret agreement between the principal and the payee, even though originally within the statute of frauds, if afterwards completely performed, would be binding, and the surety would be released.

We find no authority for holding that a contract for services "not to be performed within one year from the making thereof" may not, as any other contract, be removed from the operation of the statute of frauds if the execution is full and complete. There is no ruling to the contrary in *Bentley* v. *Smith, 3 Ga. App.* 242 (3) (59 S. E. 720), *Huggins* v. *State,* 126 *Ga.* 639 (2) (55 S. E. 492), or *Willis* v. *Fields,* 132 *Ga.* 242 (2) (63 S. E. 828). It is noticed that in *Willis* v. *Fields,* supra, the ruling was limited to a case where the agreement " did not become binding by complete performance or otherwise." " While a verbal agreement that is not to be performed within one year is not binding upon the promisor, under the statute of frauds, yet if the promisee performs some act essential to the contract, which results in loss to him and in benefit to the promisor, his part performance takes the contract out of the operation of the statute." *Bagwell* v. *Milam,* 9 *Ga. App.* 315 (4) (71 S. E. 684) ; *Williams* v. *Garrison,* 21 *Ga. App.* 44 (2) (93 S. E. 510) ; Civil Code (1910), §§ 3222 (5), 3223.

" Testimony admissible under one theory of the case as presented by the pleadings and the proof is not to be rejected because, under another theory likewise raised, it would not be admissible." *Capital City Brick Co.* v. *Atlanta Ice & Coal Co., 5 Ga. App.* 436 (3) (63 S. E. 562).

We conclude that no error is disclosed in this ground of the motion.

4-6. Ground 7 excepts to a charge of the court submitting to the jury the issue.raised by the plea setting up the defendant's discharge by reason of the alleged extension of the maturity of the note, in support of which was offered the evidence referred to in the preceding division of this opinion. It is insisted that the charge was not warranted by any evidence in the case. It is contended that the testimony of McCullers was too " confused, indefinite, uncertain, evasive, and self-contradictory " to establish any definite agreement respecting the extension of the time of the payment of the note, or to authorize the jury to find in favor of the defendant upon this plea. While the evidence is exceedingly indefinite as to the time of the making of the agreement from which it is alleged the discharge resulted, and might be legitimately criticised before a jury upon all the grounds stated in this as-

signment, we cannot say for these reasons that it had no probative value, as a matter of law. The jury in the discharge of their exclusive function, from some portions of the evidence, would have been warranted in drawing inferences sufficiently definite, applicable to the plea. Twice was the plea, without objection, read to the witness (once by the attorney for the plaintiffs), with the question whether it was true, and the answer in each instance was affirmative. There were other portions of his evidence sufficiently definite, notwithstanding as a whole it may have been ever so incoherent or inconsistent.

While the Supreme Court has said that " when a witness testifies to facts incoherently or inconsistently, that circumstance goes to his credit, and if his testimony be very incoherent or inconsistent, it should be considered with great caution " (*Evans* v. *Lipscomb,* 31 *Ga.* 71 (2) ), this rule relates to the province of the jury, and this court cannot say that the testimony of one not a party has no value merely because it is self-contradictory. The rule is different as to a party to the case testifying in his own behalf. *Ray* v. *Green,* 113 *Ga.* 920 (2) (39 S. E. 470) ; *Meinhard* v. *DeLoach,* 19 *Ga. App.* 323, 327 (91 S. E. 446).

The jury may believe a part of the testimony of a witness who is not a party and reject another part (*Sappington* v. *Bell,* 115 *Ga.* 856, 42 S. E. 233), and " it was for the jury to determine whether the testimony of the witness was so vague, indefinite, and uncertain as to be worthless, or whether the testimony — though contradictory in some respects — possessed some degree of probative value." *O'Brien* v. *Ellarbee,* 14 *Ga. App.* 333 (5) (80 S. E. 864). " The credibility of a witness is a matter to be determined by the jury under proper instructions from the court." Civil Code (1910), § 5883. See also *Holcombe* v. *State,* 5 *Ga. App.* 47 (6) (62 S. E. 647) ; *Marshall* v. *Woodbury Banking Co.,* 8 *Ga. App.* 221 (68 S. E. 957) ; *Borders* v. *City of Macon,* 18 *Ga. App.* 333 (2) (89 S. E. 451). This court is without jurisdiction to adjudge that testimony is worthless because of the " witness's manner of testifying." Civil Code (1910), § 5732. The charge cannot be held erroneous on the ground that it was not warranted by the evidence.

Other exceptions to this charge are dealt with respectively in headnotes 5 and 6, which do not require elaboration. However,

if evidence tending to establish an agreement unenforceable under the statute of frauds would at the same time demand the conclusion that if the agreement was made it was fully executed, so as in the same breath to remove the operation of the statute, it is doubtful if an instruction upon the statute would be proper.

7-11. In ground 8 of the motion for a new trial exception is taken to an instruction to the jury in relation to the plea of discharge of the defendant as surety by reason of the failure of the payee to record a mortgage alleged to have been given as security for the note; and in ground 9 it is complained that the court committed error in charging the jury in relation to the defense that the defendant had been discharged by reason of the alleged release by the payee, for a consideration, of a cosurety, Eugene Martin. It is assigned that each of these charges was erroneous as being unwarranted by the evidence. Since we think that these exceptions should be sustained, it is unnecessary to refer to certain other objections to these charges. The evidence in no sense tended to sustain the plea of discharge for failure to record the mortgage, for the reason that it indisputably appears that the mortgage was never accepted; and irrespective of whether, since the mortgage was not attested, the creditor should ordinarily have procured its acknowledgment in form for record (but see *Bacon v. Hanesley,* 19 *Ga. App.* 69 (2) (90 S. E. 1033), the payee, not accepting it, assumed no duty in regard to its record. If its rejection or non-acceptance was without the consent of the defendant as a surety, this would constitute an element of an entirely different defense. Whether, if the essentials of such a defense were fully established, the surety should be discharged altogether, or only to the extent of the value of the property, is not presented for decision.

We think the other charge was erroneous for the same reason. There was no evidence tending to establish that Eugene Martin was ever released by the payee, if he ever became bound. The matter of consideration is nowhere referred to; nor is it shown that there was even an attempt at such release. The testimony tended to show only that he signed the note as surety upon the condition that he would not be liable unless others signed the note in the same capacity, and that this was made known to the payee before the credit was extended. The charge that the defendant

would be released if the payee compounded with and released Martin was unwarranted by the evidence. We are of the opinion that the instructions, in each instance, were calculated to mislead and confuse the jury, and tended to prejudice the plaintiff's rights.

Since the jury are exclusively the judges of the credibility of the witnesses, we cannot say that the verdict was without any evidence to support it; and solely for the errors in the charges last referred to the overruling of the motion for a new trial is reversed.

No question was raised as to the admissibility of parol evidence to prove that the defendant was a surety upon the note importing prima facie that he was a principal.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*